**BANTUELLE v. JONES** et al.

No. 4204.

Court of Civil Appeals of Texas. Texarkana.
June 21, 1932.

Rehearing Denied June 30, 1932.

E. B. Levee, Jr., and E. Newt Spivey, both of Texarkana, for appellant.

Hatchell & Campbell, of Longview, and Caldwell, Gillen, Francis & Gallagher, of Dallas, for appellees.

LEVY, J. (after stating the case as above).

The points on appeal in effect bring in review the elements of damages recoverable in the circumstances shown for the alleged wrong done by the lessor to the lessees. The assignments of errors upon which the lessor chiefly relies are those relating to the admission of evidence, the measure of damages, and the amount of the judgment.

■ In the precise facts of the case, as established by the jury, the lessor induced the lessees to take the lease by the fraudulent representations that he was going to erect a water tower and tank in his block, which was subdivided into lots, for the purpose of supplying water to the respective tenant houses on the lots in the block, and was going to install in each house connections for water, sewer, and gas, and was going to furnish gas and water at the prevailing rates. He specially represented to the lessees that these particular things would be "installed at once and that same would be ready for use by the time the tenants, and in particular these plaintiffs, would have their building completed and ready for business, the lots being at the time unimproved property." The written lease does not covenant, nor contain language amounting to a covenant, that these things shall be done or installed. The lessees were leasing the premises especially to conduct the business of cleaning and pressing clothes, and water, gas, and sewer connections were necessary to conduct the business in the building. After sixty days' occupancy of the building the lessees were compelled to desist operating their business on the leased premises because of the official action taken by the health and sanitary department of the town of Kilgore in respect to the use and occupancy of the premises. The further use of the premises was interdicted during such interval of time as the water and sewer connections mentioned should remain not duly made to the premises. Such system and utilities had been installed in the town. In consequence of the enforcement of the ordinances regulating the use of the type of building and the method of conducting the particular business, the lessees' beneficial enjoyment of the premises was in fact greatly impaired. And by reason of the actual interdiction of the use of the premises, upon the failure or refusal of the lessor to carry out his representations for an uncertain and apparently undeterminable period of time in the future, the disturbance of the lessees' possession may be considered as amounting, in effect, to an eviction, as a direct product of the fraud of the lessor. The premises became useless during such uncertain interdicted period of time for carrying on the business of the lessees, and the lessees so regarded them, and they yielded the use of the building, as they had the legal right to do in virtue of the disturbance of their possession, and moved their trade fixtures and machinery to another place. Such compulsory suspension of business, as the effect of the fraud, involved, as proven, the expense of making the change from the building to another place of the trade fixtures and machinery. These expenditures incurred in moving the trade fixtures and machinery to and from the rented building in suit may therefore be regarded, it is believed, as proper elements of special damages arising directly out of the commission of the tort charged against the lessor. They were damages for an injury the lessees sustained as the natural and proximate result of having been put in a position worse than they would have occupied if there had been no fraudulent representations. It is according to the general principle that the recovery should be commensurate with the injury where one who is fraudulently induced to enter into a lease contract pursues a necessary course of action from which expenditures have naturally succeeded or in consequence of which he has been compelled to pay money. The party guilty of the fraud is to be charged with such damages as have naturally and proximately resulted therefrom. 3 Sutherland on Damages (3d Ed.) § 864; 26 C. J. § 78, p. 1169. It was allowable even in the view of expenses incurred in reducing damages for interruption of the business. 17 C. J. § 132, p. 806.

■ As respects the item awarded as damages for value of the building erected on the premises, it likewise, in the special circumstances, may be regarded as recoverable. This building was erected on the leased premises, as seemingly appears from the record

and the theory of the trial, by the lessees, and as theirs, to be removable by them. It was specially claimed that the building was by the lessor "appropriated to his own use and benefit" or converted after the trade fixtures were moved from the building, and that particular transaction was made the basis for the recovery of the damages suffered by the taking over of the building. Consequently the damages recoverable for the loss of the building arose wholly out of the commission of the act of conversion and not, in a legal sense, out of the commission of the tort based on fraudulent representation. It is not claimed by the appellant that the particular damages are not allowable as for conversion.

██ It is believed the lessees may not in the situation shown predicate the right to recover the profits or gains of the business which, as they claim, would have been yielded or earned during the unexpired period of the lease, and which, as claimed, they lost as the proximate result of the alleged tort based on fraudulent representations. Assume as a fact that the lessees might have realized profits or gains of business in the future occupation of the leased premises, yet, in view of the findings of the jury, such profits or gains that might have been earned could not be made the basis of compensation for the commission of the alleged tort. The lessees would be entitled to compensation only for the loss the particular tort caused or brought about, and if the particular tort did not cause or bring about any loss, then no damages could be said to have been occasioned or sustained as a consequence of the tort. According to the jury findings, the profits made by the lessees in the operation of their business on the leased premises during their sixty-day occupancy without being furnished the water, gas, and sewer connections that the lessor fraudulently represented would be made, were in the daily sum of "$19.85," whereas the profits or gains that the lessees "would have reasonably made" in the operation of their business "on the property in question" in the future occupancy of the premises for the period of the lease "had they been furnished with a sufficient supply of water, gas and sewerage connections" were in the daily sum of "$8.00." Such findings may not be regarded as reflecting a special damage or loss directly and necessarily occasioned to the business by the alleged wrongful act or default of the lessor. More daily gains were yielded by the business operated without the water and sewer connections than were represented would be made. And the recovery by the lessees of the profits or earnings of $8 daily that would have come from the future occupancy of the building may not be predicated in this case upon being prevented by the alleged fraud of the lessor from carrying on their business at all in the future occupancy of any building during the unexpired period of the lease. There is no pretense of evidence that the lessees were prevented from leasing another building. The claim in the suit was to the extent only that the lessees' business was lessened in the use of the particular building by reason of the alleged wrongful representation that water, gas, and sewer connections would be promptly made. And, further, the recovery of the alleged future profits or earnings of the business may not be predicated upon breach of a contract in that respect. Such special loss does not appear to be based on any term of contract express or implied. The lease does not contain a covenant or language amounting to a covenant that the premises shall be suitable for a particular purpose nor that connections shall be made for water, gas and sewer purposes. If such covenants were made, reformation of the written lease contract was not sought nor prayed for.

The judgment is accordingly modified so as to eliminate the recovery for the amount of the future profits or gains, and as so modified will be in all things affirmed. The costs of appeal to be taxed against the appellees.