## EVANS v. RENFROE.

No. 9296.

Court of Civil Appeals of Texas. Austin.

March 24, 1943.

Rehearing Denied April 14, 1943.

Collins, Jackson, Snodgrass, & Blanks, of San Angelo, for appellant.

Kerr & Gayer, of San Angelo, for appellee.

BLAIR, Justice.

Appellee, Tom Renfroe, sued appellant, J. W. Evans, for reformation of a written lease of a ranch, upon the ground of mutual mistake as to the acreage of the ranch, and to recover the amount of overpayments of rentals made as the result of the mutual mistake as to the acreage of the ranch. In the alternative, appellee sought reformation of the lease and damages in the amount of overpayments of rentals upon the ground that appellant misrepresented the acreage of the ranch; but no issue was requested nor submitted to the jury on this ground of fraud, and it was therefore waived.

A jury trial upon special issues resulted in verdict and judgment for appellee in the sum of $4,139.36, with interest; but the judgment recited that "except for the recovery of said sum of $4,139.36, with interest and costs * * * all relief prayed for * * * (by appellee) is hereby denied." Both parties excepted to the judgment and gave notice of appeal. Appellant only has prosecuted an appeal.

With respect to his suit for reformation of the written lease of the ranch upon the ground of mutual mistake as to the acreage of the ranch, and to recover the amount of overpayments of rentals made as the result of the mutual mistake as to the acreage of the ranch, appellee alleged and testified, in substance, that shortly before and at the time of the execution of the original lease on February 6, 1934, appellant represented, and both parties thought or supposed, that the ranch contained seven sections of land, or 4,480 acres, in two adjoining pastures, which the contract described as follows: "First pasture containing three sections or 1920 acres of land, more or less, and being the three sections known as the home place or ranch of J. W. Evans, and now in his possession; and the second pasture containing four sections, or 2560 acres, more or less, immediately west of the above described three section pasture and is now occupied in and in the possession of 'J' Hargraves and Guy Hargraves, both of said pastures being situated about 25 miles northwest of the town of Mertzon, and being a part and out of said J. W. Evans' Eleven Section Ranch, situated in Irion County, Texas."

The original lease as to the three sections began January 1, 1934, and appellee moved on the same about the date of the lease contract, February 6, 1934. As to the four sections the lease began July 1, 1934, at which time appellee took possession of and moved on this pasture, and thus he took possession of and began the operation of the entire ranch. This lease contract fixed the rentals as follows: "Lessor and Lessee have entered into this lease and rental contract for a consideration that the lessee is to pay lessor 65 cents per acre per annum during the life of this contract."

The original lease expired of its terms on December 31, 1938; but on July 14, 1938, it was extended for a period of five years from and after January 1, 1939, by reference to and adoption of the terms of the original lease, except the renewal fixed the rentals at 75¢ per acre per annum; the material portions of the renewal lease reading:

"Whereas, the lessee is now in possession of the lands and premises described in a certain lease contract between the parties hereto dated February 6, 1934, covering about 4480 acres of land in Irion County, Texas;

"The rentals accruing under this renewal and extension contract shall be the sum of seventy-five cents per acre per annum."

The original lease provided that the rentals were payable semiannually and in advance, and at the time appellee took possession of the three-section pasture he paid the rentals due thereon from January 1, 1934, to July 1, 1934, on the basis of 65¢ per acre for 1,920 acres. On July 1, 1934, he paid the 65¢ per acre on the entire 4,480 acres for the next succeeding semiannual period, and thereafter paid each semiannual rental on the date it was due, on the basis of 65¢ per acre for 4,480 acres under the original lease, and on the basis of 75¢ per acre under the renewal lease for 4,480 acres.

In April, 1940, a survey made in connection with the payment of prickly pear eradication benefits by the federal government revealed the fact that the three-section pasture which was supposed to contain 1,920 acres was short 664 acres; and that the four-section pasture which was supposed to contain 2,560 acres had an excess of about 57 acres; and that instead of there being seven sections of 4,480 acres in the ranch, it actually contained 3,873.66 acres or a shortage of 606.34 acres. Appellee testified that his first knowledge of this shortage was when the agency in charge of the pear eradication requested him to sign a release so that appellant could get his money or pay for digging the pear. Appellee further testified that he immediately thereafter called appellant's attention to the shortage in acreage, and demanded that appellant pay him the difference between rentals calculated on the basis of 3,873.66 acres and 4,480 acres; that appellant refused, contending that the 4,480 acres were in the ranch. Appellee then employed a surveyor who made a survey and found the same shortage; and appellant then employed a surveyor who found the same shortage in the acreage of the land. Appellant then refused to repay appellee the excess rentals, upon the ground, according

to appellee, that his claim therefor was barred by limitation. This suit was filed about one month after appellee signed the release on the pear eradication project.

The jury found, in answer to Special Issue No. 1, that appellant and appellee were mutually mistaken as to the correct acreage contained in the land described in the lease. The first point presented by appellant is that the evidence conclusively established that there was no mutual mistake as to the shortage in the acreage of the ranch.

The evidence detailed supports the jury's finding that the parties were mutually mistaken as to the acreage in the ranch. In fact, appellant was greatly surprised when he was finally convinced of the shortage. He had owned a part of the land since 1903, and had ranched it and had always rented it as containing two pastures, one of 1,920 acres and the other 2,560, or as seven sections of land, containing 4,480 acres. The parties considered the entire ranch as containing 4,480 acres, the rentals being calculated upon the basis of 4,480 acres at 65¢ per acre under the original lease and at 75¢ per acre under the renewal lease, which the uncontroverted evidence showed was the fair and reasonable rental value of land in this area.

Our attention is called to the fact that the lease described 4,480 acres, "more or less," which fact appellant urges as showing that the parties could not have been mutually mistaken as to the exact number of acres of land in the ranch, because by the use of the term, "more or less," the parties conclusively showed that they did not know the exact acreage of the ranch. Appellant testified that he insisted at the time that there were 4,480 acres, and that the more or less clause was put in because of some jogs in the outside fence line of the three-section tract; but that he informed appellee that he could take the ranch or leave it at 4,480 acres, 1,920 acres in one pasture and 2,560 acres in the other pasture. With respect to the more or less clause in the lease, appellee testified as follows:

"Q. At the time you were negotiating with Mr. Evans about leasing this land, was there anything said about you taking the ranch as a whole for a gross sum of money? A. No, it was on an acreage basis and nothing was said about a lump sum; it was so many acres at 65 cents an acre per year, and in the renewal the rental was 75 cents an acre.

"Q. In your lease contract which was read to the jury the acreage is stated as 4,480, more or less; did you notice that clause in there? A. Yes, it was called to my attention right off the reel that these fences were not right on the line but varied some. If there had been a few acres difference either way, that it would be adjusted."

■■ No specific issue was pleaded as to whether appellee agreed to a lump sum rental, but if so, no request was made to submit the issue to the jury, and it was therefore waived. In their briefs both parties discuss the more or less clause in the lease as bearing upon the issue of whether the parties were mutually mistaken as to the acreage of the ranch. And since appellant testified that he thought the ranch contained two pastures, one of three sections, or 1,920 acres, and the other of four sections, or 2,560 acres, and that he was greatly surprised when he learned that it only contained 3,873.66 acres, we think the more or less clause in the lease was not conclusive of the fact that the parties were not mutually mistaken in the acreage of the ranch, as contended by appellant. The evidence rather conclusively showed that the parties were mutually mistaken in the belief that the ranch contained seven full sections, or 4,480 acres, on the basis of which they executed the lease contract, and accordingly carried it out until the acreage shortage was discovered and actually determined by surveys of the land.

As finally presented to the trial court appellee sought relief from the lease contract because of the mutual mistake as to the acreage of the ranch upon two grounds or theories: 1) for reformation of the original and renewal leases so as to provide for rental payments on the basis of 3,873.66 acres at 65¢ per acre under the original lease and 75¢ per acre under the renewal lease, and for recovery of the excess rentals paid on the basis of 4,480 acres; and 2) for recovery without reformation of the lease contracts of the excess rentals paid up to the date of filing of this suit, under the mutual mistake that the ranch contained 4,480 acres, instead of only 3,873.66 acres, with interest, the recovery being as for money paid or had and received because of the mutual mistake as to the acre-

age of the ranch. As respects these two grounds of relief, and after fully alleging all facts with regard to the mutual mistake as hereinabove stated, appellee prayed for relief, as follows: "Wherefore, premises considered, plaintiff prays that upon a hearing hereof the aforesaid grazing lease contract and the renewal and extension thereof be reformed in such manner as to provide for the payment of rentals on the basis of 3,873.66 acres of land at sixty-five cents (65¢) per acre per annum to January 1, 1939, and at seventy-five cents (75¢) per acre per annum from January 1, 1939, to January 1, 1944. Plaintiff further prays for judgment for his said damages in the sum of $3,562.28, together with interest thereon from the respective dates of said excessive payments, and for all other relief, general and special, legal and equitable, to which the plaintiff may be entitled, and for costs of suit."

The trial court specifically denied appellee reformation of the lease contracts; but upon the jury finding of mutual mistake as to the acreage of the ranch allowed appellee the excess paid under the mutual mistake that the ranch contained 4,480 acres, instead of 3,873.66 acres, as for money paid or had and received.

■■ No reason is recited in the judgment as to why reformation of the lease contracts was denied, and although appellee gave notice of appeal he has not done so, nor has he cross-assigned error in that respect. His rights on the appeal are therefore limited to recovery without reformation of the excess rentals paid under the mutual mistake as to the acreage of the ranch, the recovery being as for money paid or had and received as the result of the mutual mistake. Appellee is here seeking an affirmance of the judgment awarding him the recovery of the excess rentals paid up to the date of filing of this suit, which he asserts is one as for money paid or had or received under mutual mistake as to the acreage of the ranch. The trial court could have refused reformation under the settled rule that reformation of an executory or partially performed contract may be refused where there is evidence to the effect that the parties may not have contracted if they had known the true facts. Clemmens v. Kennedy, Tex.Civ. App., 68 S.W.2d 321 writ refused.

■ The rule is that where an injured party seeks to avoid a contract entered in-

to under mutual mistake of fact, which if enforced would be materially more onerous on him than it would have been had the fact been as the parties believed it to be, he has three remedies: 1) to avoid the contract entirely; or 2) to obtain a reformation or performance of the contract according to the actual intent of the parties when same was entered into; or 3) where it is possible by compensation to the party injured by the mistake to put him in as good a position as if the contract had been what he supposed it to be. Restatement of the Law of Contracts, Sec. 502. This rule has been applied in Texas where land has been leased or sold by the acre. Mitchell v. Zimmerman, 4 Tex. 75, 51 Am.Dec. 717; and Smith v. Fly, 24 Tex. 345, 76 Am.Dec. 109, wherein the court say: "It appears to be well settled that, in the sale of land, where there has been misrepresentation as to the quantity, though innocently made, and the parties were under a mistake as to the quantity, and the deficiency is so great as to have been material, in the object of the purchase, affecting the essence of the contract, equity will grant relief. * * * And this, says Judge Story, would be so, although the land was described as so many acres 'more or less.' It would certainly be so, where the land is sold by the acre."

See Mason v. Peterson, Tex.Com.App., 250 S.W. 142, 146, and cases there cited; Reid v. Byrd, Tex.Civ.App., 34 S.W.2d 305, 307, which case affords complete analogy both of fact and law to the instant case, and wherein the court say: "But, where the deficiency is excessive, relief may be had as for money had and received, as well as upon allegations of fraud and mistake. Thus in Smith v. Fly, 24 Tex. [345], 349, 76 Am.Dec. 109, it was said relief may be had where 'the deficiency is so great as to have been material.' In this case the deficiency is almost 12 per cent. of the recited acreage of 71.55 acres as against a deficiency of only about 10 per cent. in the second case cited."

The rule thus announced is applicable to the instant case. Appellant stated that he represented the acreage of the ranch to be 4,480 acres, and that he was greatly surprised to learn that it did not contain 4,480 acres. Appellee stated that he did not know what acreage the ranch contained, but relied upon the representation of appellant that it contained 4,480 acres, and agreed to rent the ranch on the basis of 65¢ per acre under the original lease, and

at 75¢ per acre under the renewal lease. The jury found that the parties were mutually mistaken as to the acreage of the ranch, and the undisputed evidence showed that it contained only 3873.66 acres. The trial court calculated the difference between 4,480 acres, the basis on which the rentals were paid, and 3,873.66 acres, the actual acreage of the ranch, and rendered judgment for this amount, as for money paid or had and received as the result of the mutual mistake as to the acreage.

Among other defenses appellant plead the defense of limitation, and by his second point contends that the "evidence conclusively established that the plaintiff (appellee) was charged with knowledge of the alleged shortage more than four years prior to the time he instituted this suit." On this issue appellee alleged, in substance, the facts as to the mutual mistake of the parties as to the acreage of the ranch and as hereinabove detailed. He further alleged and testified, in substance, that he was wholly ignorant of the exact acreage in the ranch; that appellant represented it to contain 4,480 acres; that he relied upon such representation and the mutual mistake of the parties that the ranch contained 4,480 acres; that the outside fences of the three-section tract did not run in straight lines; that the three-section tract or pasture was brushy and rough and mountainous, and that there were very few points where one could see from one fence to the other over the top of the mountain; and that there was no fact or circumstance which transpired which put him on notice or inquiry as to the acreage of the ranch until the shortage was discovered by the federal agency survey in connection with the payment of prickly pear eradication, which was the project of appellant. He then demanded the repayment of the excess rentals, which appellant refused, still contending that the ranch contained 4,480 acres. A qualified surveyor was then employed by appellee, and his survey of the land on April 8, 1940, revealed the same shortage of 606.34 acres. This was called to the attention of appellant, who then employed another surveyor, who found substantially the same shortage as to the acreage of the ranch. Appellant then refused to repay the excess rentals, according to appellee, on the ground that his claim therefor was barred by limitation. Appellant testified that he owned about eleven sections of land, of which the seven sections leased to appellee were a part; that he had always considered the three-section pasture as containing three sections, or 1,920 acres, and had so leased it since he became the owner—some of which he purchased in 1903. He had lived on and ranched part of the three-section pasture, and was greatly surprised when he learned that it was short about 664 acres. Appellant's son, who had lived on and ranched the three-section pasture, and who was living at the time on an adjoining tract, testified that, "we always called it three sections; it was always known as three sections." He further testified:

"Q. You thought there were three sections? A. Yes, sir. * * *

"Q. Your father told Mr. Renfro (appellee) he thought there were three sections in there? A. Yes, sir; he always called it three sections."

Appellee filed his suit for recovery of the excess rentals paid under the written contract on May 10, 1940. And on the limitation issue the jury found: 1) that appellee did not learn of the shortage in acreage prior to May 10, 1936, (the date upon which the four-year period immediately preceding the filing of this suit began); 2) that by the use of ordinary care appellee could not have learned of the shortage in acreage prior to May 10, 1936; and 3) that by the exercise of ordinary care he could not have discovered the shortage in acreage until the date he signed the prickly pear release, shortly before he had a survey made of the land, on April 8, 1940.

Under his above stated point two, and his points three and four, appellant summarizes the evidence upon which he relies to show that appellee had knowledge of the shortage in the land prior to the beginning of the limitation period; or that he was negligent in failing to discover the shortage; or that having for a period of more than six years paid the rentals without the exercise of any effort to discover the shortage, which he could have done at any time by a survey of it; or that having continuously lived upon and ranched the land, and executed a renewal lease thereon, he should be held to be negligent in failing to discover the shortage, or to have ratified or waived the same.

We think the evidence was conflicting as to the three issues covering limitation, and that it was sufficient to support the jury's findings thereon.

The evidence showed that both appellant and appellee were elderly men, each having had long experience in owning, leasing and ranching grass lands. Appellant had owned or operated the land under a blocking agreement, which was to include alternate sections with his own sections in the pasture in exchange of similar blocking of sections of his land in pastures of other owners, for a long number of years. Appellant had lived on and operated the ranch and had leased the three-section pasture as containing 1,920 acres, always believing that it contained 1,920 acres. His opportunity to discover the shortage was as open and available as was that of appellee, and for a much longer period of time, yet he was greatly surprised when the federal agency first discovered the shortage by actual survey; which was likewise the first actual notice appellee had of the shortage. So confirmed in his belief that the pasture contained 1,920 acres, appellant refused to accept either the federal agency's survey, or the survey made by appellee's surveyor, but employed a surveyor of his own choice, who found substantially the same shortage as appellee's surveyor had found.

Appellant urges as particular circumstance as putting appellee upon notice or inquiry of the shortage the fact that shortly after he took possession of the ranch on February 6, 1934, he found that the grass was too short to run the amount of stock on the three-section pasture, and began to feed them; and that appellee testified that if the pasture had contained 1,920 acres it would not have been overstocked. But he bought the stock from appellant, and appellant ran the stock prior to the lease to appellee on the pasture, which would have afforded him, an equally experienced ranchman, the same opportunity to discover the shortage on account of being overstocked. Likewise, the facts with respect to jogs in the fence lines, the blocking of the acreage, that the land had never been surveyed, the refusal, if he did, of appellant to survey the land, that the pasture was brushy and mountainous, were all facts which were equally available to both parties; and the jury had the right to consider them in support of its findings on the limitation issues. Likewise, the facts or circumstances that the lease described the land as containing 4,480 acres, more or less, together with the discussion of the parties as to the meaning of the clause, that it meant that slight differences would be adjusted, that appellant stated that the pasture contained 4,480 acres, and that appellee could take the lease or leave it on the basis of 4,480 acres, were all merely facts and circumstances which the jury might consider in making its findings, both as to mutual mistake as to the acreage of the ranch, and the issues of limitation on the cause of action for recovery of the excess rentals paid as the result of such mistake. None of these facts or circumstances conclusively shows knowledge, or want of diligence, waiver or ratification, the last two being not pleaded, on the part of appellee as to the shortage of acreage in the ranch.

■ The established rule in this state is that in causes of action based upon fraud or mutual mistake, limitation begins to run against the injured party from the time such fraud or mistake is discovered, or could have been discovered by the exercise of reasonable diligence. Mason v. Peterson, Tex.Com.App., 250 S.W. 142, 143, 145, wherein the court say: "The seller is ordinarily presumed to know the quantity, character, and quality of the land which he owns and offers for sale. * * * Limitation begins to run from the time he discovers the mistake or fraud or from the time he should have discovered it."

In Mitchell v. Zimmerman, 4 Tex. 75, 51 Am.Dec. 717, it is held that in either sale or lease of land that: "The owner of the premises must be supposed to be peculiarly cognizant of the fact of the quantity of land fit for cultivation, which he undertook to state. * * * It was both natural and proper for the latter to look to the former [lessor] for information, and he had a right to expect the truth."

In this connection appellant cites a large number of cases which hold that in causes of action involving fraud or mutual mistake, limitation begins to run when knowledge of facts that would cause a reasonably prudent person to make inquiry is disclosed; or that the running of the statute will not be tolled where no reason is assigned why the discovery could not sooner be made, and particularly where a long period of time has elapsed; or that where a party is called upon to exercise some diligence to discover fraud or mistake which would be disclosed in a short time; or that "actual knowledge of the fraud is not required; reasonable prudence must be exercised to discover the fraud, and knowledge of acts sufficient to put one upon in-

quiry will operate as notice of the fraud." Carver v. Moore, Tex.Com.App., 288 S.W. 156, 158, and cases there cited. We find no fault with this rule, but are of the view that it was applied by the jury in the instant case upon sufficient evidence, and certainly upon evidence which did not conclusively show knowledge or want of diligence on the part of appellee in failing to discover the mutual mistake of the parties as to the acreage of the land, as above discussed. Particularly could the jury consider the fact that both appellant and appellee had equal opportunity to discover the mutual mistake, and that the same incident caused them both to discover their mutual mistake.

Appellants' fourth and fifth points to the effect that appellee elected to ratify the contract and should have sued for partial failure of consideration of the contract, and under the measure of damages applicable, are fully answered by the judgment of the trial court and our holding that as finally submitted appellee's suit was one for money paid or had and received under a written contract entered into because of mutual mistake of the parties as to the acreage of the ranch. This appellee had the right to recover without reformation or cancellation of the contract. Reid v. Byrd, supra, which states the rule to be that where land is sold (or leased) at a certain price per acre and a deficiency occurs as the result of mutual mistake, the purchaser's (or lessee's) damages are the difference between the acreage sold (or leased) and the actual acreage, the excess price (or rentals) thus paid being recoverable as for money paid or had and received under mutual mistake; and which may be recovered without reformation. The undisputed evidence showed the acreage shortage to be 606.34 acres, which multiplied by 65¢ per acre under the original lease and 75¢ per acre under the renewal lease, plus interest on each rental payment from the date thereof, fixed the measure of damages or recovery to which appellee was entitled under the pleadings and evidence.

Appellant's sixth point complains that no jury finding fixed the amount of damage of $4,139.26 awarded by the trial court. No such finding was necessary under the rule just stated. There was no dispute as to the acreage shortage. The contract fixed the rentals on an acreage basis, and the dates of the payment of each rental payment was undisputed. Under such facts a mere mathematical calculation determined the amount of the recovery to which appellee was entitled.

The seventh point that the judgment was for an excess amount is not sustained. This seems to be predicated on the claim that appellee voluntarily paid three rental payments after filing his suit, but included them by amended pleadings prior to the trial. Appellee testified and the contract showed that it could be forfeited for failure to pay any rental when due; and each check for the three payments in question was marked "paid under protest."

The eighth point is not sustained. It complains that there was no finding of the jury that the mistake relied upon was material. The undisputed facts showed the mistake as to the acreage of the ranch to be material. The facts showed the shortage to be 606.34 acres, which at 65¢ and 75¢ per acre is as a matter of law a material mistake.

The ninth and remaining point of appellant is not sustained. It is based upon the claim that counsel for appellee made an unauthorized, inflammatory and prejudicial argument to the jury, and told them the effect of their answers on the limitation issues. The argument set forth in the bill will not be set out, but shows that it was based upon proper inferences and conclusion from the evidence. Briefly, counsel praised appellant because he honestly confessed that he was mistaken as to the acreage of the ranch and that appellee was also honestly mistaken as to the acreage. That notwithstanding this honest mistake, appellant refused to repay the excess rentals, but plead limitation; counsel reading appellant's plea of limitation so as to fix for the jury the exact limitation period, and concluded that if they found from the evidence that appellee should have discovered the acreage shortage, "then Mr. Renfroe is sunk, and it is too bad." The argument was not objectionable, but merely presented appellee's theory of the case and his reasonable inferences and deductions from the evidence, and sought jury answers favorable to appellee upon his theory of the case.

The judgment of the trial court is affirmed.

Affirmed.