## ARROTT v. SMITH.
### No. 9830.

Court of Civil Appeals of Texas. Austin.
Dec. 14, 1949.

Rehearing Denied Jan. 4, 1950.

Kerr, Gayer & Sutton, Lloyd Kerr, of San Angelo, for appellant.

Wilson & Wilson, Geo. T. Wilson, of San Angelo, for appellee.

GRAY, Justice.

This suit was filed by appellee against appellant for recovery of the per acre price for a deficiency in the number of acres of land called for in a deed from appellant to appellee.

At the close of the testimony both parties presented their motion for an instructed verdict, or that the cause be withdrawn from the jury and decided by the court. The jury was discharged and a judgment was rendered for appellee for $2,392.51, the amount of this judgment being arrived at by allowing appellant certain credits and charging him expenses incurred by appellee according to agreements of the parties.

The parties entered into a written contract of purchase and sale whereby appellant contracted to sell to appellee the west 1,750 acres of a 3,350-acre ranch. This contract recited the purchase price for the land to be $23 per acre. Subsequently a deed was executed and delivered which recited a consideration of $10 and other valuable consideration paid, and the assumption by appellee of the payment of one $25,000 note. This deed described the land conveyed by naming five respective surveys, reciting the number of acres in each, and concluding with the recital, "containing in all 1748 acres, more or less."

No survey was made of the land prior to the contract or the deed and not until some three years later, at which time a shortage in acres was discovered. The deed is dated March 27, 1945, the survey was made in 1948, and the suit was filed the same year.

Appellee alleged the sale was by the acre and that the incorrect number of acres was written into the deed as a result of the mutual mistake of the parties. It is appellant's position that the sale was in gross.

After the contract was signed, and before the deed was executed, the parties discussed the matter of having the land surveyed. Appellant testified:

"Q. Mr. Arrott, I would like to ask you between the time of the contract for 1750 acres and the deed for 1748 acres, more or less, did you have any conversation during that time with Mr. Smith on getting the land surveyed? A. Yes.

"Q. Where was it? A. Here in Robert Lee, across the street in front of Ford Motor Company. We sat in the pick-up and talked about it.

*    *    *    *    *    *

"Q. Would you run over the conversation with me? A. Yes.

"Q. Just go ahead. A. We met there and got in the pick-up, and we talked about surveying the land, and I believe it was Mr. Smith made a remark, said it would cost right smart, and I said, yes, I believed it would; so he says then, says, 'Well, if the Jeffers estate owned it it's bound to be

all there,' and I says, 'Yes, I am sure it is.' And we just made an agreement right there that we would take it just like it stood, he take his side and I mine, I take the east side and he the west side as it stood.

"Q. Is that the reason you didn't have it surveyed? A. Yes, that is the reason we agreed right there not to have it surveyed.

   *     *     *     *     *     *

"Q. Well, you didn't know it was short when you deeded it to Mr. Smith, did you? A. No, sir, I didn't know it was short.

"Q. Well, when you figured the consideration, total consideration, the $25,000 plus the check for $15,204, making a total of $40,204, how did you arrive at that; how did you arrive at that amount? A. Well, we figured it by the acreage, I guess.

"Q. Figured it at $23 an acre, didn't you? A. Yes.

"Q. If you multiply 1748 acres by $23 you get $40,204 exactly, don't you? A. That is right.

"Q. And that is the amount he paid you for? A. Yes.

"Q. You still didn't know that there was a shortage in Sec. 30, did you? A. No, I didn't know it was short any.

"Q. And he didn't raise any question about a shortage? A. No, sir.

Appellee said the price to be paid for the land was figured at $23 per acre, and both parties testified that they did not know of any deficiency in acreage until the survey was made. Survey 30, C. M. Beason, is described in the deed as containing 196 acres of land. The survey made in 1948 shows, according to its calls, that this survey contains 212.78 acres, of which 149.21 acres are within a senior survey, the C. Rubio, which leaves only 63.57 acres out of conflict. It is the deficiency in acres resulting from this conflict that is here in controversy.

The Rubio survey is no part of the lands described in the deed and is not owned by either of the parties to this suit.

The field notes contained in the patents of the Rubio and the Beason surveys were introduced in evidence and show that the Beason survey lies south of the Rubio and calls for its south boundary line. The field notes of the Beason survey are: "Beginning at the N. E. cor. of Sur. No. 23½ in name of L. Cauion, a St. md. Thence west 1623 vrs. to N. W. cor. of Sur. No. 22½ in name of Wm. L. Hunter a St. md. Thence North 42 vrs. to N. E. cor. of Sur. No. 21½ in name of Caadrilla Irrigation Co., a St. md. Thence West 326 vrs. a stake in North line of Caadrilla Irrigation Co. Sur. Thence North 533 vrs. to a stake in South line of Rubio Sur. Thence East 1949 vrs. *vrs.* to a stake in South line of Rubio Sur. Thence South 575 vrs. to the place of beginning."

The survey of the Beason, made in 1948, shows that the above calls for course and distance extend into the C. Rubio, and, if given effect, actually include 149.21 acres of that survey.

Appellant does not deny the correctness of the survey as to this result, but says it does not support appellee's pleadings of deficiency in acreage because it shows the Beason to contain 212.78 acres of land instead of 63.57.

■■■■ To apply and give effect to appellant's contention in this respect would give effect to the overlapping of the junior with the senior survey.

"There can be no possible overlapping of acreage where the junior survey expressly calls to begin at the senior." Stanolind Oil & Gas Co. v. State, 129 Tex. 547, 101 S.W.2d 801, 808.

■■■■ While the call here does not begin with the senior survey, it does call for its south boundary line, and there it must stop.

"Where the senior line is established, the junior begins and the calls for distance and acreage of the junior must yield accordingly.

"A call for an adjoiner is like a call for a natural or artificial object, and any conflicting call for course, distance, or acreage, and the like, must yield." Kirby Lumber Co. v. Gibbs Bros. & Co., Tex. Com.App., 14 S.W.2d 1013, 1014.

In such case the location and acreage contained in the Beason is a matter of law, and the survey, instead of containing 196 acres, contains 63.57 acres.

Under the evidence before us we do not think it can hardly be disputed that the sale was by the acre and that the deficiency in acreage was the result of the mutual mistake of the parties. In such case the measure of damage is the per acre price of the land as that price was fixed by the parties at the date of the sale. Denman v. Stuart, 142 Tex. 129, 176 S.W.2d 730.

We think that here a deficiency of more than 100 acres of land is so material as to entitle appellee to relief. In such case it is well settled by the authorities in this state that when the sale of the land is by the acre and because of the mutual mistake of the parties as to the quantity of land conveyed, if there is a material deficiency in acreage, equity will afford relief even though the quantity of land conveyed is qualified by the use of the phrase "more or less." Franco-Texan Land Co. v. Simpson, 1 Tex.Civ.App. 600, 20 S.W. 953; Hart v. Daggett, Tex.Civ.App., 6 S.W.2d 143, 145; Evans v. Renfro, Tex. Civ.App., 170 S.W.2d 636, Er.Ref.W.M. See also annotations in 70 A.L.R., p. 368.

Limitation begins to run, in cases of this kind, from the time the deficiency is discovered, or, by the exercise of reasonable diligence, could have been discovered.

The evidence shows that the first suggestion appellee had that there might be any deficiency in the land conveyed to him was when he received his abstract from the loan company, after paying the $25,000 note mentioned in the deed. This note and lien was released March 2, 1948. After this, in 1948, the survey was made, and this suit was filed the same year, August 28, 1948. Appellant said the first that he knew about any shortage was when appellee told him, and appellee said he talked to appellant about the shortage after the survey was made. Up to this time both parties had relied on the statement in the deed as to the amount of acreage. Limitation then could not have run against appellee at the time suit was filed. The limitation applicable being four years. Art. 5529, Vernon's Ann.Civ.St.; Gillespie v. Gray, Tex.Civ.App., 230 S.W. 1027, Er. Ref.; Gillispie v. Gray, Tex.Civ.App., 214 S.W. 730.

We have examined all points presented by appellant and finding no error, the judgment of the trial court is affirmed.

Affirmed.