W. A. MADDOX, Appellant,

v.

Jack WORSHAM et al., Appellees.

No. 7710.

Court of Civil Appeals of Texas.

Amarillo.

May 1, 1967.

Rehearing Denied May 29, 1967.

Clayton & Clayton, Amarillo, Cleo G. Clayton, Jr., Amarillo, of counsel, for appellant.

Sanders, Scott, Saunders, Brian & Humphrey, Amarillo, Howard F. Saunders, Amarillo, of counsel, for appellees.

NORTHCUTT, Justice.

This is an action for damages based on fraud and deceit in a real estate transaction. J. L. Worsham, J. R. Walsh, Jr. and V. L. Watkins, as plaintiffs, brought this suit against W. A. Maddox, as defendant, for damages which the plaintiffs contend resulted from fraud and deceit practiced on the plaintiffs by defendant when plaintiffs leased a certain ranch in New Mexico from the defendant and a breach by the defendant of the lease provisions in failing to deliver the plaintiffs full and exclusive possession of the land which defendant had contracted to deliver to the plaintiffs. The defendant filed a general denial and denied that he expressly advised the plaintiffs or any of them that the Maddox Ranch definitely contained 30,000 acres or more and further pleaded that he never at any time breached any of the terms of the lease. The defendant filed a cross-action to have the lease cancelled and terminated and defendant recover all rentals accruing and owing to defendant. The lease contract was cancelled by agreement of the parties with the agreement that neither party waived their right to any action that they might have.

The case was tried to the court without a jury. Judgment was granted in favor of the plaintiffs for the sum of $25,207.88, and denied the defendant any relief upon his cross-action. From that judgment the defendant perfected this appeal. The parties will hereinafter be referred to as they were in the trial court.

The defendant requested the trial judge for separate findings of fact and conclusions of law. The trial court made and entered such findings and conclusions as follows:

## FINDINGS OF FACT

"1. A grass lease contract was executed and delivered, dated February 22, 1963, between W. A. Maddox, as lessor, and J. L. Worsham, J. R. Walsh, Jr., and V. L. Watkins, as lessees, leasing 30,000 acres of land, more or less, in Mora, Harding, and San Miguel Counties, New Mexico, to lessees.

"2. Plaintiffs paid Defendant the total sum of $64,000.00 rental under the February 22, 1963, lease, $17,100.00 under lease termination agreement between Defendant and Plaintiffs dated October ——, 1965.

"3. The February 22, 1963, lease agreement between Defendant and Plaintiffs was terminated by an agreement dated October ——, 1965, which was executed and delivered by all Plaintiffs and Defendant.

"4. Defendant, represented to Plaintiffs as a fact that his ranch, the Maddox Ranch, contained 30,000 acres or more, owned or leased by him, and would carry an average of 800 mother cows, and such representations were material representations.

"5. Defendant's representations found in Finding 4 supra were false and Defendant knew he owned no more than 20,940 acres of land and had leased no more than 3,398 acres of land as his Maddox Ranch.

"6. Defendant knew that his owned and leased land in his Maddox Ranch would not carry an average of 800 mother cows.

"7. Defendant's representations found in Finding 4 supra were made to induce Plaintiffs to execute and deliver the lease contract of February 22, 1963, and as representations of fact on which Plaintiffs could rely.

"8. Plaintiffs accepted as true and relied on Defendant's representations.

"9. Defendant did not place Plaintiffs in sole possession of the Maddox Ranch.

"10. Plaintiffs were damaged by Defendant's false representations of fact and Defendant's failure to put them in sole possession of the Maddox Ranch in the sum of $25,207.85.

"11. Intervenors have not been paid all commissions owed them by Defendant, and Defendant owes intervenors an $875.00 balance of commissions.

## CONCLUSIONS OF LAW

"1. The ownership by Defendant of not more than 20,940 acres of fee land and not more than 3,398 acres of leased land as the Maddox Ranch is a material acreage shortage under the lease agreement of February 22, 1963, between Defendant, as lessor, and Plaintiffs, as lessees.

"2. The representations of Defendant to Plaintiffs and his acts and conduct leading to the execution of the February 22, 1963, lease agreement were an actual and legal fraud upon and against Plaintiffs.

"3. The failure of Defendant to place Plaintiffs in possession of 30,000 acres, more or less, of Maddox Ranch was a breach of Defendant's lease obligations.

"4. Plaintiffs have been damaged by Defendant's fraud and breach of his lease obligations, and in the sum of $25,207.85, which amount and costs herein, plus 6% interest thereon from date of judgment, Plaintiffs are entitled to recover from Defendant.

"5. Intervenors are entitled to recover $875.00 additional commissions, as provided in the February 22, 1963, lease

agreement, their costs herein, and 6% interest thereon from date of judgment."

The rights of the intervenors are not involved in this appeal.

The plaintiffs plead they sustained damages in the amount of $71,000 because of defendant's false statements and failure to deliver exclusive peaceful possession of the land defendant purportedly leased to the plaintiffs. No exceptions were levied as to any of the pleadings. The lease contract provided that the defendant warranted that he was the owner of the property specified and had the right to lease it to the plaintiffs in quiet possession and would warrant and defend the plaintiffs' possession against any and all persons whomsoever.

The only way we can determine under this record the basis upon which judgment was rendered is by considering the findings of fact and the conclusions of law. In Findings of Fact Nos. 9 and 10 it refers solely to the Maddox Ranch. It has no reference as to whether there was 30,000 acres or less in the ranch. The Conclusion of Law No. 3 holds the defendant's failure to place plaintiffs in possession of 30,000 acres, more or less, of the Maddox Ranch was a breach of defendant's lease obligation. That is not a holding that there was not 30,000 acres in the Maddox Ranch. Then Conclusion of Law No. 4 holds that plaintiffs were damaged by defendant's fraudulent breach of his lease obligation in the sum of $25,207.88. Defendant's obligation under the lease was that he warranted that he was the owner of the property specified *and had the right to lease it to the plaintiffs.* (Emphasis ours.) There is no question under this record but what defendant had let to other parties a portion of the Maddox Ranch prior to entering into the lease here involved and such parties were in possession of such land and were pasturing the same and defendant did not have the right to lease that portion of the ranch to the plaintiffs because he had previously let it to others. There is an abundance of evidence to sustain such holding. The defendant did not deliver possession to the plaintiffs of a portion of said ranch as he had contracted to do but could not comply with the lease because he had fraudulently contracted to do something he could not do. We believe under this record judgment was granted against defendant because of his fraudulent representations among other fraudulent representations as to water on the ranch and the number of cattle the ranch would support that he could and did deliver to the plaintiffs full possession of the Maddox Ranch consisting of 30,000 acres and that he knew such representations were false. The damages as proven by the evidence because of such failure to perform as to the acreage and the representations as to the number of cattle the ranch would support would justify a finding of far in excess of that found by the trial court.

It seems to be the contention of defendant that the trial court erred in holding the defendant made fraudulent representations and breached his contract because there was no evidence of probative value that the ranch had less than 30,000 acres or that plaintiffs relied upon any representations of the defendant. The contract designates 30,000 acres were being leased. The undisputed record shows and so found by the court that the defendant did not have 30,000 acres to lease to the plaintiffs. There was evidence the lease was based upon the price of $1.00 per acre. There was evidence that before the lease was entered into plaintiffs informed defendant they wanted a ranch to run approximately 800 head of mother cows; and unless this ranch would support that number, they would not be interested in renting the ranch and that defendant assured the plaintiffs that the ranch would carry 750 to 900 mother cows. Plaintiff Worsham testified before entering into the lease that he was vitally interested in knowing what the carrying capacity of the ranch was and what defendant's experience had shown it to be and he asked defendant what the most mother cows that he, the defendant, had carried on the ranch and defendant's answer was in the neighborhood of

600 head besides steers and various other types cattle operations on it. Plaintiffs entered into the lease and purchased 400 head of mother cows defendant had on the ranch and then bought 300 head more and moved them on the ranch. Worsham further testified he asked defendant as to the water condition and was told there was no water problem; that Romero Canyon pasture had live water on it; that it had never been dry; that the Water Canyon pasture had never been dry—had live water; that they had twelve miles of the Canadian River with live water; that he had built forty some odd dams on the ranch; and that they had ample water in every pasture. After taking possession of the ranch, Worsham discovered other persons owned some of the land in the ranch and others were running cattle on a portion of it. Worsham further testified after buying the extra 300 head of cattle on the ranch he found Esquebel and Gallegas cattle on the river and he was compelled to seek additional pasture and move 200 head to the Wagon Mound that cost him $6,000; that they ran out of water as they only had three miles of Canadian River water; there were less than twenty tanks on the ranch and plaintiffs had to finally sell some of the cows at a great loss because of the insufficiency of the grass because of shortage of acreage and others running cattle thereon.

It is further the defendant's contention that plaintiffs did not plead nor prove the proper measure of damages as required by Article 4004, Vernon's Ann.Tex.St., by proving the difference between the value of the leasehold estate as represented and the value of the leasehold estate as delivered. As we view this record the plaintiffs especially brought this action to recover upon the fraud and deceit of the defendant as additional damages as are directly traceable to the wrongful acts complained of and which resulted therefrom.

■■■■ Under this record the fraud was not discovered until after plaintiffs had taken possession of the lease property and expended large sums of money in purchasing additional cattle that the ranch was supposed to support as false represented by the defendant. Article 4004 affords no remedy at all to the plaintiffs of the false representations as found by the trial court concerning the realty where plaintiffs did not discover the falsity of the representations until after they expended money in an attempt to use such ranch. We are of the opinion plaintiffs herein based their action for damages on fraud both under Article 4004, V.A.T.S., and the common law action of fraud and deceit and not for breach of contract. It is stated in El Paso Development Company v. Ravel, 339 S.W.2d 360 (Tex.Civ.App.–El Paso, 1960, writ ref'd n. r. e.) as follows:

"We believe the law to be well established in Texas, as well as under general principles as to damages, that an injured party is entitled to recover in a tort action such damages as result directly, naturally and proximately from fraud. However, remote damages, or those which are too uncertain for ascertainment, or are purely conjectural, speculative or contingent, cannot be recovered. Connally & Shaw v. Saunders, Tex. Civ.App., 142 S.W. 975; Parker v. Solis, Tex.Civ.App., 277 S.W. 714; Bantuelle v. Jones, Tex.Civ.App., 52 S.W.2d 93.

"Bearing on the question of whether the statute (Art. 4004) superseded the common-law rule and provided an exclusive remedy for the recovery of damages in an action based on fraud in a real estate transaction, we believe this question has been settled by the case law of Texas, and that the answer is 'No.'"

That case further held:

"Holding as we do that the liability of the maker of a false representation involving a transaction in land is not confined to the measure of damages fixed by the statute, but that the recipient thereof may also recover from such maker, regardless of privity, *such additional damages as are directly traceable*

*to the wrongful act complained of and which result therefrom,* we believe the basic question presented by appellant's Points 3 and 5, and Points 6 through 8, is the question of whether or not the total of the damages found by the jury is directly traceable to the false representation made by appellant, and resulted therefrom."

 There is sufficient evidence in this record to sustain the holdings of the trial court that equity requires relief and also to sustain the findings and holdings of the trial court. The court has found the acreage defendant represented he had and was leasing was short by several thousand acres. The lease provided for 30,000 acres, more or less. We notice in the record "more or less" has been underscored. It is stated in Arrott v. Smith, 225 S.W.2d 639 (Tex.Civ.App.–Austin, 1949, no writ) as follows:

"We think that here a deficiency of more than 100 acres of land is so material as to entitle appellee to relief. In such case it is well settled by the authorities in this state that when the sale of the land is by the acre and because of the mutual mistake of the parties as to the quantity of land conveyed, if there is a material deficiency in acreage, equity will afford relief even though the quantity of land conveyed is qualified by the use of the phrase 'more or less.' Franco-Texan Land Co. v. Simpson, 1 Tex. Civ.App. 600, 20 S.W. 953; Hart v. Daggett, Tex.Civ.App., 6 S.W.2d 143, 145; Evans v. Renfro, Tex.Civ.App., 170 S.W.2d 636, Er.Ref.W.M. See also annotations in 70 A.L.R., p. 368."

The rule is well settled that the judgment of the trial court will not be set aside if there is any evidence of a probative nature to support it and that a Court of Civil Appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings.

Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972 (1951); Liedeker v. Grossman, 146 Tex. 308, 206 S.W.2d 232 (1947); First State Bank of Temple v. Metropolitan Casualty Ins. Co. of New York, 125 Tex. 113, 79 S.W.2d 835 (1935), 98 A.L.R. 1256; Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684, 79 A.L.R.2d 774 (1959); Woodward v. Ortiz, 150 Tex. 75, 237 S.W. 2d 286 (1951); Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792 (1951).

We have carefully considered all of defendant's assignments of error and overrule each and all of them.

Judgment of the trial court is affirmed.