**EL PASO DEVELOPMENT COMPANY,**
Appellant,

v.

**Dr. Vincent M. RAVEL and wife, Annette
Ravel, Appellees.**

No. 5404.

Court of Civil Appeals of Texas.

El Paso.

Oct. 5, 1960.

Rehearing Denied Oct. 26, 1960.

R. Nèill Walshe, Richard C. White, El Paso, for appellants.

Mayfield, Broaddus & Goodman, El Paso, for appellees.

LANGDON, Chief Justice.

This is an action for damages based on fraud and deceit in a real estate transaction. Appellees, Dr. Vincent M. Ravel, and wife, recovered judgment against appellant, El Paso Development Company, developer of the land, and against one W. A. Steinbach, contractor, for damages sustained by appellees to a dwelling constructed for them by defendant contractor, on a vacant lot (located at 3916 Flamingo Drive), in the City of El Paso, Texas, purchased from appellant El Paso Development Company.

Appellees alleged that appellant El Paso Development Company fraudulently represented to them that the lot in question was free of "clay and fill" and was a suitable site for the construction of a large and expensive dwelling thereon. Suit was also against the defendant Steinbach, contractor, for damages for breach of contract.

The judgment was for $4,000 against defendant contractor, Steinbach, for breach of contract; and for $22,250 against appellant El Paso Development Company, developer of the land, for misrepresentation of the sub-soil condition of the lot. No appeal was taken from the judgment by defendant Steinbach. El Paso Development Company alone has appealed. All prerequisites of appeal have been complied with, and this case is properly before us.

The case was submitted to the jury on sixteen special issues, the first four of which related to the cause of action alleged against the defendant contractor, and the remaining issues to the appellant El Paso Development Company. The jury found against the defendant-contractor on the following numbered issues: (3), that defendant Steinbach failed to construct the improvements upon the lot in question in a good and workmanlike manner; and, (4), the damages, $4,000. The remaining issues relating to appellant El Paso Development Company were found by the jury as follows: (5), that defendant, El Paso Development Company, through its president, represented to plaintiff Ravel, prior to April 17, 1954, that the lot in question was free of clay and fill; (6), that such representation was false; (7), that defendant El Paso Development Company knew such representation was false at the time that it was made; (8), that such defendant, in the exercise of ordinary care, should have known that such representation was false; (9), that such defendant knew at the time such representation was made that plaintiff intended to have a four-bedroom house erected on said lot; (10), that plaintiff was induced by such representation to construct a four-bedroom house on said lot; (11–12), that defendant El Paso Development Com-

pany did not know that if said house was built on said lot, it would be damaged as a result of the soil conditions thereunder, but defendant, in the exercise of ordinary care, should have known if said house was built thereon, it would be damaged as a result of the soil conditions thereunder; (13–14), that plaintiffs learned of the falsity of the representations in January, 1957; and, also, in the exercise of ordinary care, plaintiffs should have learned of its falsity in January, 1957; and finally, the damage questions, special issues (15) and (16), in which the jury found, first, that the reasonable market value of said house and land in August 1954 (at the time of the delivery of same to plaintiffs) would have been $52,250, if said house had been constructed on soil without clay or fill; and secondly, found the reasonable market value of the house and land in August 1954, in the actual condition of the house constructed thereon and delivered to plaintiffs at such time, was $30,000.

The damages awarded appellees was the difference between these two figures—the sum of $22,250. The measure of damages under the statute, Article 4004, Vernon's Annotated Texas Civil Statutes, is stated as follows:

"* * * the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract."

The only property represented by appellant was the vacant lot; and, under the facts of this case, no other property was delivered by appellant except the vacant lot. Appellant is not charged with, nor does the evidence reflect, that he made any representation with respect to the house that was subsequently constructed thereon. Thus, this case does not fall within that line of cases where the house or other improvements are already constructed, represented to have been constructed, or promis-

ed to be constructed on the land made the subject of the alleged false representation.

Appellant's appeal is predicated upon fourteen points of error.

By Points 1 and 2, appellant contends that appellees are limited, as a matter of law, to such damages as they may show are related to the purchase of the vacant, unimproved lot. It is also contended that the remedy provided by the statute (Art. 4004) is exclusive, and that in Texas the only damages that may be recovered, in an action based on fraud in a real estate transaction, are confined to the damages allowed by the statute.

By appropriate counter-points, appellees submit that this was not a suit for damages arising out of the purchase of the lot, but is a suit for special damages sustained by appellees directly resulting from appellant's fraudulent representations as to the suitability of the lot in question as a building site for the construction of a dwelling thereon. Appellees state that this was not a suit founded upon any representation as to the price or the value of the lot in question, as contemplated by Article 4004, but is, instead, based upon a fact situation which was misrepresented by the appellant, and which directly resulted in damage to appellees when acted upon by appellees in reliance thereon.

Prior to the enactment of Article 4004, supra, in 1919, the Texas rule for measuring damages in fraud cases involving transactions in land was the rule announced in 1906 by the Supreme Court of Texas, in the case of George v. Hesse, 100 Tex. 44, 93 S.W. 107, 8 L.R.A.,N.S., 804, and followed by that Court in Booth v. Coward, Tex. Com.App., 265 S.W. 1026, 1027, in which the Court said:

" * * * that since the cause of action was not upon breach of contract but to recover damages for fraudulent representations, *the measure of compensation was the difference between the values that were exchanged* and

not the difference between the value of the land received by plaintiff without a well on it and the value of that land if a well had been upon it." (Emphasis ours.)

The statute (Art. 4004) enlarged the measure of damages from the "out of pocket" damages allowed by the rule announced in the Hesse case (supra) to the damages which are measured by the difference between the value of the property as *represented,* or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition in which it is *delivered* or received at the time of the contract. The statutory measure of damages is sometimes referred to as the "benefit of the bargain" rule.

In the case at hand, appellees caused an expensive home to be constructed on the lot in question, before discovering the falsity of the representations concerning the sub-soil conditions of the lot. Since the value of the lot was not shown to have been affected by the truth or falsity of the representation, the measure of damages allowed by the statute would afford no relief, and neither would the equitable remedy of rescission.

■ The damages, alleged and sought to be recovered by appellees in this action, are not the direct or general damages provided by the statute (Art. 4004), which the law implies or presumes to have occurred from the wrong complained of, but are in the nature of special or consequential damages. The only difference between general and special damages is that general damages are the necessary and usual result of the wrong complained of, while special damages need not be, *but must be the proximate result thereof.*

■ Special damages, predicated upon a wrong, which are not necessarily the usual or ordinary result of such wrong, but are directly traceable to the wrongful act complained of and result therefrom, may be recovered in a common law action based on

fraud and deceit; but all other damages will be held to be too remote.

■ We believe the law to be well settled in Texas, as well as under general principles as to damages, that an injured party is entitled to recover in a tort action such damages as result directly, naturally and proximately from fraud. However, remote damages, or those which are too uncertain for ascertainment, or are purely conjectural, speculative or contingent, cannot be recovered. Connally & Shaw v. Saunders, Tex.Civ.App., 142 S.W. 975; Parker v. Solis, Tex.Civ.App., 277 S.W. 714; Bantuelle v. Jones, Tex.Civ.App., 52 S.W.2d 93.

■ Bearing on the question of whether the statute (Art. 4004) superseded the common-law rule and provided an exclusive remedy for the recovery of damages in an action based on fraud in a real estate transaction, we believe this question has been settled by the case law of Texas, and that the answer is "No."

In the case of Sibley v. Southland Life Ins. Co., 36 S.W.2d 145, 146, decided in 1931 by the Supreme Court of Texas, it was said:

> "The rule announced in the year 1906, in the case of George v. Hesse, * * * and followed in Booth v. Coward, * * * has been supplemented, if not superseded, by the above statutory rule."

Sibley had represented to the plaintiff company that each of 22 lots had a brick dwelling house on it, and the jury found that, as to one of these 22 lots, said representation was false. This was Lot No. 7 which was, in fact, vacant; but Lot No. 6, an improved lot, was represented to be Lot No. 7. The value of the vacant lot and the value of the improved lot were found by the jury, and the court allowed plaintiff to recover the difference between these two values as found by the jury, holding this to be the proper measure of damages under the statute.

The "benefit of the bargain" rule was applied in the Sibley case, supra; but the failure of a case to come within the provisions of the statute (Art. 4004) does not prevent a recovery for fraud as recognized under the general laws and rules of equitable jurisprudence. See Fraud and Deceit, 20-A Tex.Jur. 26, sec. 8.

In El Jardin Immigration Co. v. Karlan, Tex.Civ.App., 245 S.W. 1043, 1045, plaintiff-appellee was shown one tract of land by the agent, George, a defendant, as the land he was selling to appellee, but another and different tract was conveyed to him. Appellee went into possession of the land and made valuable improvements thereon. The court, in holding that the case was not one within the purview of the statute (Art. 4004), since it was not apparent that there were any promises to perform a future act, no evidence what the difference was in the relative value of the two tracts for irrigation purposes, and no showing what damage was done to and suffered by appellee, said:

> "The facts in this case do not establish the right to recover herein under any possible construction of the statute * * * but that does not prevent a recovery under the general laws and rules of equitable jurisprudence against the actual perpetrators of the alleged fraud."

The Court of Civil Appeals, in the case of Cockburn v. Less, 257 S.W.2d 470, 475, in passing upon the question of whether the remedy provided by the statute was exclusive, said this:

> "* * * we are of the opinion that appellant had alternative remedies. He chose to base his action for damage on fraud both under Art. 4004, V.A.C.S., and the common-law action of fraud and deceit, and not for breach of contract. *The remedy under Art. 4004 is remedial and cumulative.*" (Emphasis supplied.)

In a fraud case involving a transaction in land (particularly vacant or unimproved land), falsely represented as suitable for a particular purpose when it is, in fact, harmfully inappropriate for such purpose, it sometimes happens, as was alleged in this case, that the fraud is not discovered until *after* the recipient of the false representation has expended money in an attempt to use said land for the purpose for which it was falsely represented to be suitable. Where the fraud is discovered *after* the purchase or exchange of properties is made, but *before* the recipient of the false representation has expended money in attempting to use the land for purposes for which it was represented to be suitable, the remedy provided by the statute is entirely adequate; but the statute affords no remedy at all to the recipient of a false representation concerning realty who, after having purchased the land, does not discover the falsity of the representation until after he has expended money in an attempt to use such land.

■ Under the common law, a remedy was provided for both of the above situations. There, damages which the recipient of a fraudulent representation was entitled to recover was the pecuniary loss shown to have resulted from the falsity of the matter represented, including not only (1), the difference between the value of the thing obtained and its purchase price or the value of the thing exchanged for it; but, also, (2), *pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the truth of the representation.* We are of the opinion that the statute supplemented, but did not supersede, any of the remedies at common law. Appellant's Points 1 and 2 are accordingly overruled.

Unlike the general damages allowed both at common law and by the statute (Art. 4004), where special damages only are alleged, such damages must be shown to be the proximate result of the fraud. The court's charge failed to restrict the jury

in its findings on the damage issues, Nos. 15 and 16, to damages which proximately resulted from the fraud.

Holding as we do that the liability of the maker of a false representation involving a transaction in land is not confined to the measure of damages fixed by the statute, but that the recipient thereof may also recover from such maker, regardless of privity, *such additional damages as are directly traceable to the wrongful act complained of and which result therefrom,* we believe the basic question presented by appellant's Points 3 and 5, and Points 6 through 8, is the question of whether or not the total of the damages found by the jury is directly traceable to the false representation made by appellant, and resulted therefrom. Appellant's Point No. 7.

The issues on damages were submitted by the trial court and answered by the jury as follows:

"Question No. 15

"What sum do you find from a preponderance of the evidence, represents the reasonable market value in El Paso County, Texas, of plaintiffs' house and land in August 1954, at the time of the delivery of the same to the said Vincent M. Ravel, if said improvements were constructed on soil without clay or fill? Answer in dollars and cents.

"We answer: $52,250.00."

"Question No. 16

"From a preponderance of the evidence, what sum do you find represents the reasonable market value of plaintiffs' house and land in El Paso County, Texas, in August 1954, in the actual condition of the house constructed thereon and delivered to him at such time? Answer in dollars and cents.

"We answer: $30,000.00."

In answer to other special issues, the jury found that the defendant contractor,

W. A. Steinbach, *failed* to construct the improvements upon the lot in question in a good and workmanlike manner. In addition, the evidence also reflects that there were a number of deficiencies in the construction attributable to sub-contractors, as well as outright deviations from the plans and specifications:

1. The wire mesh used to reinforce the concrete slab floor was not pulled up into the concrete;

2. The concrete slab at some points was only 1.88 and 2 inches thick, and at another point only 2.81 inches thick, and not 4 inches thick as called for in the specifications;

3. The wire mesh was supposed to be imbedded in the concrete, not placed under it;

4. Water pipes were imbedded in the concrete, when they should have been placed under it;

5. Galvanized nipples and fittings were used on the copper plumbing, which will cause leaks to develop from erosion of the pipe due to electrolysis;

6. The pipe was located on top of the felt pad and on top of the wire mesh, which should not be done;

7. No provision was made for expansion of slabs between joints;

8. Pipe was run directly through the concrete slab into the house, the usual practice being to place a sleeve in the concrete whenever any pipes are required to pass through concrete.

It appears to be undisputed that the damage to plaintiffs' home resulted when a leak developed in the copper plumbing beneath the concrete slab floor of appellees' house, which permitted large quantities of water to be discharged beneath the slab. The water expanded the soil, causing pressure from below which raised the slab, and, as the water continued to escape, the slab went lower from opposite effects, and caused cracks to develop in the house. After the leaks were repaired, the moisture below the slab was reduced by percolation and evaporation, which caused an un-uniform differential movement of the structure above the slab. This placed strain on the structure and cracks resulted.

There was evidence to the effect that, had a leak not developed beneath the slab, nothing would have happened to the house; that the pipe would not have broken had it been placed underneath the concrete, and there would have been no leak.

The jury found that appellant did not know that appellees' house would be damaged as a result of the soil conditions thereunder, but that, in the exercise of ordinary care, appellant should have known that it would be damaged as a result of such soil conditions.

What is the limit, if any, of appellant's responsibility for consequential damages caused by the fraud and deceit? Because of the similarity of this class of tort action to cases on contract, courts have been led, occasionally, to say that the result must have been within the probable contemplation of the parties when the representation was made or acted upon. We think the better rule is that announced by the majority of the cases in which the test adopted in tort cases, generally, has been applied—namely, the standard of the "proximateness" of the result.

In the case at hand, the trial court gave the jury no instructions as to the measure of damages. Under the issues as submitted, the jury was permitted to attribute to appellant's misrepresentation of the sub-soil conditions of the lot all of the loss thereafter sustained by appellees, without having first determined that the damage found by them proximately resulted from the wrongful act of the appellant.

Appellant's Point No. 7 is sustained, and its Points 3, 5, 6 and 8 are sustained insofar as these points relate to the question of proximate cause and the failure of the court to properly instruct and limit the jury to a finding of only such damages

as were shown to have proximately resulted from the misrepresentation. In the absence of jury findings based on proximate cause, the "special" damages found by the jury constitute immaterial findings of damages, which are too remote and speculative to support a judgment.

In a common-law action based on fraud and deceit, all of the elements of fraud must be alleged and proven, if a judgment in favor of plaintiff is to be supported. If special damages, as distinguished from general damages, are sought, then such damages must be shown to have proximately resulted from the fraud.

From what we have said, it follows that this case must be reversed as to that part of the judgment appealed from by El Paso Development Company. Since this case is to be remanded to the trial court for a new trial, other errors complained of will not be specifically passed upon. However, in view of the possibility of a retrial of this case, we have set out below what we deem to be the basic elements required to be alleged and proven by plaintiff in an action based on fraud and deceit. The enumeration may also serve as a guide to the trial court in submitting the controlling issues:

(1) That defendant made or was connected with the making of the representation;

(2) That it was as to a material fact;

(3) That it was false at the time it was made;

(4) That it was made with intent to induce the plaintiff to do or to refrain from doing some act;

(5) That plaintiff relied on it, believing it to be true, and was induced thereby to act or to refrain from acting;

(6) That plaintiff thereby suffered injury. (Issues on proximate cause are required only where "special" damages are sought to be recovered.)

By other assignments of error, appellant complains that the court's charge is a "quasi-negligence—quasi-fraud" charge; that such charge, as submitted to the jury, contained issues sounding in negligence (a theory of recovery not plead by appellee), and on which action the Statute of Limitation would have been a complete bar; that the submission of such issues, although immaterial to the allegation of fraud, would influence and prejudice the jury in its consideration of other issues submitted by the court, including the question of damages. It is apparent from the record that the cause of action alleged against appellant, El Paso Development Company, was based on fraud and deceit, and not on a theory of negligence. In such case, issues submitted by the court and sounding in negligence would constitute error. While it is true that a false representation may give rise to a cause of action based on either fraud or negligence, recovery may be had upon but one such action, and not upon both.

Appellant also complains of certain argument attributed to appellees' counsel during opening and closing arguments, which was as follows (First, during opening argument, by Mr. Mayfield):

> " * * * these two things that have cost the Ravels, in addition to * * * *just untold heartaches* in this thing. I think—I don't think there is any question in anybody's mind from the testimony that was brought forth in this case, *the heartaches that occurred,* when people built what they thought was fine, fine home, for their family, to see it break, and then have people come in there and strip the walls, and do it again and again. But heartache in this thing is something you can't put money value on, * * *."

(and finally, in the closing argument by Mr. Broaddus):

> "What is that against a million and eight hundred thousand dollars?"

No objection appears to have been made by appellant, at the time, to the argument made by Mr. Mayfield, and no request was

made that the jury be instructed to disregard it. Objection was made, however, to the argument of Mr. Broaddus, on the ground that it was outside the record, was an effort to impress upon the jury an excessive amount of wealth on the part of appellant, and that such was highly prejudicial and was made for the purpose of prejudicing the jury. Appellant's motion that the jury be instructed to disregard in full that line of argument, and appellant's motion that a mistrial be declared by reason of such statement, were both overruled by the court; to which rulings by the court exception was taken, and the matter has been preserved for our consideration by appellant's Bill of Exception No. Two.

In view of the disposition to be made of this case, and since the error, if any, complained of is not essential to our holding herein, we refrain from passing upon the question of whether reversible error has been presented by the Bill. We are of the opinion, however, that such argument was improper, and assume that it will not be repeated in the event of a retrial of this cause.

That part of the judgment appealed from by appellant El Paso Development Company is reversed and is remanded to the trial court.