**CLEBURNE NATIONAL BANK, Cleburne, Texas, et al., Appellants,**

v.

**KENEDCO, INC., et al., Appellees.**

**No. 5595.**

Court of Civil Appeals of Texas, Waco.

Feb. 10, 1977.

Rehearing Denied March 10, 1977.

**68**

Gean B. Turner, Turner, Turner & Turner, Anderson & Anderson, Cleburne, Sloan B. Blair, Cantey, Hanger, Gooch, Cravens & Munn, Paul C. Cook, Ft. Worth, for appellants.

Earl Rutledge, Ft. Worth, Robert J. Wilson, Burleson, for appellees.

HALL, Justice.

At all pertinent times, Edward Leroy Leck and Kenneth Pugh were the only shareholders and directors (each owning 50% of the stock) of a Texas corporation known as Kenedco, Inc. Through Kenedco, Leck and Pugh operated a business known as KenLee Marine Sales, selling boats, boat trailers, boat motors, and related marine products; and another business known as Cleburne Muffler Shop, selling mufflers and other automobile accessories. Pugh managed KenLee and Leck managed the muffler shop. Cleburne National Bank financed the inventory of KenLee for Kenedco under a system commonly known as "floor-planning," whereby KenLee executed individual promissory notes and security agreements as items of inventory were purchased, and then paid the note involved as the item securing it was sold. Bank's loans to Kenedco were also secured by the written personal guaranties of Pugh and Leck. Additionally, Bank held a vendor's lien note executed by Kenedco, which was secured by a deed of trust lien on land owned by Kenedco. In November, 1973, Bank initiated suit against Kenedco, Leck, and Pugh to collect on floor-plan notes whose principal amounts totaled $77,496.62; to collect on the balance of the vendor's lien note in the amount of $27,943.96; and for interest, attorneys' fees, and foreclosure of its security interests and deed of trust lien.

Later, Leck brought suit against Bank and Pugh alleging in detail that Bank and Pugh conspired to impair and fraudulently and negligently did impair the collateral for the notes by disposing of inventory without proper payment to KenLee, by failing to see that Bank's floor-plan notes were paid as the inventory was disposed of, and by false inventory checks and reports. He pleaded that as a result of these activities he "has been caused to suffer damages by reason of his personal liability for Kenedco, Inc.'s indebtedness to Cleburne National Bank in a sum at least equal to the principal amount of all notes executed by such corporation to such Bank totaling $107,-496.80," plus interest and attorneys' fees, "and for $40,000.00 in consequential damages in the form of expenses relating to such corporation for which he may be adjudged liable to Kenedco, Inc.; for $150,-000.00 for damages to his credit standing; for $25,000.00 damages to his personal estate in the event he is held personally liable for the corporation's said indebtedness to Cleburne National Bank"; and for exemplary damages totaling $3,500,000.00. He prayed for judgment "for his damages as are above set forth."

The cases were consolidated. Thereafter, the court appointed Joseph M. Coffey, Jr., Receiver to take charge of Kenedco's assets.

The trial was to a jury. No issues were submitted to it relating affirmatively to Bank's action on the notes. However, the jury made a number of findings of conspiracy, fraud, and negligence against Bank and Pugh in support of Leck's contentions of impairment of the notes' collateral by them. The jury then made the following answers to the damage issues submitted on behalf of Leck:

No. 48a: $100,000.00, "For his personal liability for the indebtedness of Kenedco, Inc.";

No. 48b: None, "For injury to his credit standing";

No. 48c: None, "For injuries to his personal estate";

No. 49: $50,000.00 for exemplary damages against Bank; and

No. 50: $50,000.00 for exemplary damages against Pugh.

Based upon these findings, judgment was rendered awarding Leck an affirmative recovery of $100,000.00 against Bank and Pugh, jointly and severally, for actual damages; and $50,000.00 against Bank and Pugh, each separately, for exemplary damages.

The judgment contains these additional recitations:

"It further appearing to the Court from the Report of the Receiver, Joseph M. Coffey, Jr., on file herein, and from the representations of counsel for Cleburne National Bank, Edward Leroy Leck, and Kenedco, Inc., that all alleged indebtedness of Kenedco, Inc., to Cleburne National Bank has been settled and compromised subsequent to the return of the jury's verdict;

"IT IS THEREFORE FURTHER ORDERED, ADJUDGED AND DECREED that Cleburne National Bank recover nothing of or from Kenedco, Inc., Edward Leroy Leck, or Kenneth Pugh by this suit."

This recitation of settlement and the take-nothing judgment based upon it against Bank are not challenged by any party.

Bank and Pugh appeal. Among other grounds for reversal they assert that the jury's answer to special issue 48a (awarding Leck $100,000.00 for his personal liability for the indebtedness of Kenedco) is defensive in nature, can serve only to reduce Leck's liability for any recovery by Bank against Kenedco, and will not support an affirmative recovery in favor of Leck against them; and that in view of the take-nothing judgment against Bank in favor of Kenedco, Leck is not entitled to any relief based on this finding. Additionally, they say that because the jury failed to find (in answers to issues 48b and 48c) that Leck suffered any actual damages, he is not entitled to exemplary damages. Responding, Leck says his right to recover the $100,-000.00 awarded by the jury cannot be prejudiced by activity *after* the verdict. We agree with Bank and Pugh.

V.T.C.A., Bus. & C. § 3.606 provides in pertinent part that the holder of a note "discharges any party to the instrument to the extent that without such party's consent the holder . . . unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

 Leck pleaded impairment of collateral by Bank and Pugh, each individually and in concert with the other. He sought relief to the extent this impairment affected his liability on behalf of Kenedco. Special Issue 48a submitted this question to the jury. As to Bank, this issue was plainly defensive, and could only serve to diminish or defeat Bank's recovery against Leck in keeping with the provisions of V.T.C.A., Bus. & C. § 3.606, supra. As to Pugh, it could only serve to indemnify Leck for what he might be required to pay Bank on behalf of Kenedco. It does not submit a question related to independent, affirmative relief for damages. Without indebtedness to Bank by Kenedco the issue and its answer are immaterial and will not support a judgment in favor of Leck. At the time of judgment, Kenedco was not indebted to Bank. Accordingly, Leck was not entitled to relief on the basis of the jury's answer to issue 48a.

**70**

■ The jury responded "none" in answer to Leck's only affirmative issues for damages. Without actual damages, a plaintiff may not recover exemplary damages in Texas. *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 409 (1934).

The judgment in favor of Leck against Bank and Pugh is reversed, and judgment is rendered that he take nothing against them. In all other respects, the judgment is affirmed.

The costs of this appeal are assessed against Leck.