**RYAN MORTGAGE INVESTORS and Great American Management & Inv., Appellants,**

v.

**David FLEMING–WOOD and Wilson, Bray and Lebowitz, Inc., Appellees.**

No. 2–82–093–CV.

Court of Appeals of Texas, Fort Worth.

April 14, 1983.

Rehearing Denied May 12, 1983.

McDonald, Sanders, Ginsburg, Phillips, Maddox & Newkirk, Cantey, Hanger, Gooch, Munn & Collins and Sloan B. Blair, Fort Worth, for appellants.

Simon, Peebles, Haskell, Gardner & Betty and Anne Gardner, Barlow, Gardner, Tucker & Garsek and James B. Barlow, Fort Worth, for appellees.

Before HUGHES, JORDAN and ASHWORTH, JJ.

## OPINION

HUGHES, Justice.

This is a suit for breach of contract of sale and fraud involving a developed parcel of commercial real estate known as "Cambridge Station". Ryan Mortgage Investors and Great American Management and Investment, as sellers, are appealing a jury award of $2,770,000.00 for breach of contract of sale, actual and exemplary damages for fraud and for attorneys fees.

We affirm and reform.

The Cambridge Station project had been built and conceived as a condominium project consisting of 120 units with pool and clubhouse, located in Arlington. Its construction had been financed by Ryan Mortgage Investors (Ryan) jointly with Great American Management and Investment (GAMI). As a result of severe cost overruns in 1973, the owners had offered Ryan and GAMI a deed in lieu of foreclosure. Their note had been cancelled and Ryan and GAMI thereby acquired equal ownership of the property.

David Fleming-Wood became interested in the property in 1977 and in December of 1978 he was informed by Red Herndon, a mortgage banker for Ryan Mortgage Company, President of Ryan Management Company and a member of Ryan Mortgage Investors, that a contract on Cambridge Station looked like it might fall through. Herndon wanted to know if Fleming-Wood was still interested in the property.

The contract Herndon referred to was a contract to sell the property for $2,615,-000.00 to Wilson, Bray & Lebowitz, Inc., Trustee, (Lebowitz), who was acting as trustee for some California purchasers. That contract was set to close in November of 1978. The closing never came about.

On February 14, 1979, David Fleming-Wood met with Tom Sturdivant, a mortgage banker who was a Senior Vice-President of Ryan Mortgage Company and Vice-President of Ryan Mortgage Advisors, to discuss financing for the purchase of Cambridge Station. Fleming-Wood submitted a contract on the property to Ryan's Board of Trustees, who approved it on February 20.

On February 21, 1979, Ryan and GAMI filed suit against Wilson, Bray and Lebowitz seeking forfeiture of the earnest money under the previous contract. On February 27, Bill Greene, Executive Vice-President of Ryan Mortgage Investors and Chairman of the Board of Ryan Mortgage Company received a letter from attorneys in California representing the purchasers under the Lebowitz contract. That letter stated:

"Accordingly, demand is hereby made upon you for your performance of the contract. Upon your acknowledgment of performance, our clients will complete their arrangements for financing and will close the transaction in due course. Should you refuse to proceed with the Contract, our clients will take all necessary legal steps to protect their interests."

In the meantime Ryan's attorneys had drafted their own contract of sale which Fleming-Wood signed on March 5, 1979. The contract provided for a selling price of $2,700,000.00, which was later changed to $2,950,000.00 in a contract dated April 5,

1979. That was the final contract of sale upon which this suit was filed. Fleming-Wood had delivered a check for $25,000.00 earnest money to Ryan on March 5.

On April 6, 1979, Fleming-Wood signed a mortgage loan application prepared by Sturdivant. On April 10, 1979, he forwarded a check to Sturdivant in the amount of $7,025.00 as an origination fee. On April 13 and again on April 17, Fleming-Wood forwarded to Sturdivant "pro formas" prepared for the condominium conversion indicating a phased selling program and reflecting income from both sales and rentals as well as anticipated profit. On June 1, 1979, Tom Sturdivant forwarded to Fleming-Wood a loan commitment from General Electric Credit Corporation ("GECC").

While all the negotiations were going on with Fleming-Wood, Wilson, Bray and Lebowitz had filed a counterclaim against Ryan and GAMI for specific performance along with a lis pendens. This was filed on April 11, 1979, just six days after the Fleming-Wood contract was signed. Sometime between June 1 and June 4 of 1979, David Fleming-Wood was informed that the lis pendens was filed and it was also at that time that he first learned that Ryan and GAMI had filed suit in February against the Lebowitz group under the previous contract.

In June, July and August of 1979, Fleming-Wood was continually advised by Ryan that the claim of Wilson, Bray and Lebowitz was unfounded, had no basis and that Ryan would have them thrown out of court. Fleming-Wood testified that Ryan told him it was simply a hold-up with no basis whatsoever. Nobody from Ryan indicated that it was a claim with any merit. The parties thus continued to move forward.

On June 20, 1979, Fleming-Wood forwarded the commitment fee of $21,075.00 for the loan to Tom Sturdivant. On July 26, 1979, because of the sellers' inability to provide marketable title, the parties executed an agreement to extend the date of closing under the contract to August 31, 1979, on the sellers' assurance that the lis pendens would be cleared up so that the contract could be closed in accordance with its original terms.

It was undisputed that there was no attempt by Ryan or GAMI to close and that they were, in fact, unable to close on August 31, 1979. It was undisputed that the sellers did not have marketable title at that time.

On November 5th and 6th, 1979, Marcus Ginsburg wrote letters to Fleming-Wood's then attorney, Money Adams, advising that it was his opinion that Fleming-Wood had two alternatives under the contract, either to accept title with the lis pendens in place or to terminate the contract. On November 9, 1979, Money Adams replied to the letters of Marcus Ginsburg, stating David Fleming-Wood's position that he was not required to choose between the two alternatives mentioned. This suit was filed by David Fleming-Wood shortly thereafter for specific performance.

Appellant's first two points of error attack the submission of and answer to Special Issue No. 1. That issue and answer are as follows:

"ISSUE NO. 1

Do you find from a preponderance of the evidence that Ryan and GAMI failed to perform their obligations in accordance with the Fleming-Wood Contract?

Answer 'We do' or 'We do not.'

Answer: *WE DO.*"

The first point claims the district court erred in overruling appellant's First Amended Motion for Judgment Non Obstante Veredicto and in rendering judgment for appellee because there is no evidence or alternatively insufficient evidence to support the jury's answer. The second point avers that the special issue should not have been submitted because it inquired as to a question of law or at least a mixed question of law and fact. They also complain that the answer is inadequate to constitute a fact finding that would support the judgment. In other words the issue is too broad.

■ Since the revision of Tex.R.Civ.P. 277 in 1973, broad submission of an issue is

no longer grounds for objection. As the rule states, the court has discretion on whether to submit separate questions on each element of the case or whether to submit broad issues. Appellants should be commended for their unique wording of their point of error, but their complaint that they cannot determine which obligation appellants failed to perform under the contract merely complains of the broadness of the issue, which is not objectionable.

■ Appellants also complain that no instructions accompanied the issue to define the obligations under the contract. This objection was never brought out at trial, so that under Tex.R.Civ.P. 274, the objection was waived and cannot be brought up now on appeal. Also, under Tex.R.Civ.P. 279, failure to submit a definition or explanatory instruction is not grounds for reversal unless a substantially correct instruction has been requested in writing and tendered by the party complaining of the judgment. No instruction was requested or tendered by appellants.

■ As to whether or not the special issue contains a mixed question of law and fact, we follow the reasoning in *Ellis v. Waldrop,* 627 S.W.2d 791 (Tex.App.—Fort Worth 1982, writ ref'd. n.r.e.). The court was correct when it stated that a mixed question of law and fact which would require the jurors to interpret instruments and determine the legal effect should not be asked. *Ellis v. Waldrop, supra,* at 796.

■ In the instant case, we do not feel that a mixed question of law and fact has been asked. The jury was asked to decide, upon the evidence, whether GAMI and Ryan performed or failed to perform their duties under the contract. The court must still decide whether the legal effect of that failure to perform constituted a breach of the contract. Appellants' failure to perform may have been excused in some way and would therefore not be a breach of the contract. That decision was properly left to the court.

The terms of the sales contract between GAMI, Ryan and Fleming-Wood are very plain. The jury did not have to interpret the contract to be able to determine whether or not GAMI and Ryan did what the contract required them to do. *Ellis v. Waldrop, supra; see Briargrove Shopping Center Joint Venture v. Vilar, Inc.,* 647 S.W.2d 329 (Tex.App.—Houston [1st Dist.] 1982, no writ). Appellant's second point of error is overruled.

Was there any evidence or sufficient evidence to support the jury's answer to the special issue? Appellants argue that, as a matter of law, Ryan and GAMI did not fail to perform their obligations under the contract because of paragraph 17 of the contract. That paragraph reads as follows:

In the event the SELLER is unable to convey title to the Property in accordance with Paragraph 12 of this Contract, BUYER may at its option terminate this Contract by written notice delivered to SELLER on or prior to the scheduled closing date (as deferred by any postponement in accordance with Paragraph 19); otherwise BUYER shall be conclusively deemed to have accepted SELLER's title.

Paragraph 12 that is referred to reads in part as follows:

SELLER warrants and represents to BUYER that at the time of closing hereunder it will have and will convey to BUYER good and marketable title to the Property, free and clear of any and all encumbrances except those set forth in Exhibit "B".

Ryan and GAMI argue that the remedies under paragraph 17 are exclusive and excuse their failure to have marketable title on August 31. We do not read the paragraph that way. Appellants were still under an obligation to convey marketable title. Paragraph 17 of the contract gave Fleming-Wood a remedy he did not have at common law. The wording of the paragraph, though, did not exclude his common-law remedies so that he can pursue any remedy which the law affords in addition to the remedy provided in the contract. *Tabor v. Ragel,* 526 S.W.2d 620 (Tex.Civ.App.—Fort Worth 1975, writ ref'd. n.r.e.). Flem-

ing-Wood may have been conclusively deemed to have accepted Seller's title, but that does not mean he cannot pursue his remedies for the defects. With the lis pendens in place, Fleming-Wood was in effect accepting no title. GAMI and Ryan themselves admit that Fleming-Wood would be unable to obtain financing with the lis pendens on the property.

■ If appellants felt that paragraph 17 of the sales contract excused their obligation to convey good and marketable title on August 31, they should have asked for a jury finding on such. The remedy under paragraph 17 is not exclusive and could not excuse appellant's performance as a matter of law. There was sufficient evidence to support the jury's finding. Point of error one is overruled.

Appellant's next two points of error complain of the answer to Special Issue No. 8. That issue, which was submitted by appellant, reads as follows:

ISSUE NO. 8

Do you find from a preponderance of the evidence that Fleming-Wood failed to accept an offer by Ryan and GAMI to close under the Fleming-Wood Contract?

Answer "We do" or "We do not."

ANSWER: WE DO NOT

If you have answered Issue No. 8 "We do not," then answer Issue No. 8A; otherwise do not answer Issue No. 8A.

ISSUE NO. 8A

State the date on which you find from a preponderance of the evidence that Fleming-Wood accepted an offer by Ryan and GAMI to close under the Fleming-Wood Contract and state the date on which you find from a preponderance of the evidence such offer, if any, was made.

Answer by stating the date of the acceptance and offer by stating the month, day and year.

a. Date of Acceptance.

ANSWER: 4/5/1979

b. Date of Offer.

ANSWER: 4/5/1979

Appellant argues that these two issues would not sustain the plaintiff's burden and that the evidence established the opposite as a matter of law.

The jury's finding on Issue No. 8 amounts to a non-finding. Appellants, who requested the issue and had the burden of proof, did not establish by a preponderance of the evidence that Fleming-Wood failed to accept an offer to close by Ryan and GAMI.

■ Appellants first argue that the evidence was insufficient or that there was no evidence to support a non-finding. This portion of the point of error is overruled since a negative answer to an issue need not be supported by affirmative evidence. *Traylor v. Goulding,* 497 S.W.2d 944 (Tex. 1973). *See also State Reserve Life Ins. Co. v. Ives,* 535 S.W.2d 400 (Tex.Civ.App.—Fort Worth 1976, no writ).

■ Appellants can only argue, as they did in their third point of error, that the evidence establishes the answer as a matter of law. *Traylor v. Goulding, supra.* The evidence does not establish the opposite. Appellant cites this court to no evidence that the Ginsburg letters of November 6 were an offer to close. The letter itself mentions no offer to close. Appellees even objected several times to the use of the word offer when the letters were being discussed. There was no jury finding that an offer to close had even been made after the August 31 closing date passed.

The answers are, in fact, immaterial and not necessary to support the judgment. Fleming-Wood alleged that a breach of the contract occurred on August 31 when appellants could not convey good and marketable title under the contract. A finding on Issue Nos. 8 and 8a is irrelevant to this contention. Also, the findings of the jury on other issues were sufficient to support the judgment so that any error was harmless. *Texas Const. Service Co. of Austin v. Allen,* 635 S.W.2d 810 (Tex.Civ.App.—Corpus Christi 1982, no writ). The third and fourth points of error are overruled.

Appellant's next two points of error complain of the jury's answer to Special Issue No. 2a where the jury awarded Fleming-Wood $2,000,000.00 as damages. He argues

that appellee was not entitled to recover damages based on benefit of the bargain and that there is no evidence or, alternatively, insufficient evidence to support the jury's answer.

■ Appellant made two objections to the Special Issue. It objected to the date used for the determination of fair market value and that the issue invited the jury to speculate as to lost profits. Appellant is now urging that benefit of the bargain was the improper measure of damages. This objection was waived since the objection was not made at trial. *Tom Benson Chevrolet, Inc. v. Alvarado,* 636 S.W.2d 815 (Tex. App.—San Antonio 1982, no writ).

Even if appellant had properly preserved his error under the facts of this case, benefit of the bargain was the proper measure of damages.

■ Generally, the measure of damages for breach of contract to sell real estate is the difference between the contract price and the market value of the property at the time of the breach. *Long v. Brown,* 593 S.W.2d 371 (Tex.Civ.App.—Dallas 1979, writ ref'd. n.r.e.). It is only where the vendor is unable to make title through no fault of his own that the buyer is limited in his recovery to a return of the purchase price and special damages. In other words, the general rule still applies if the vendor is guilty of fraud. It also still applies if the vendor is not guilty of fraud, but nevertheless "disables" himself from carrying out the contract or fails or refuses to perform. *Matthewson v. Fluhman,* 41 S.W.2d 204 (Tex.Comm.App.1931); *Dobson v. Zimmerman,* 55 Tex.Civ.App. 394, 118 S.W. 236 (Tex.Civ.App.1909, writ ref'd.).

■ In this case appellants argue that, through no fault of their own, they were simply unable to convey marketable title because of the lis pendens. Appellants conveniently overlook that it was they who initially filed a lawsuit against Lebowitz to clear title under the Lebowitz contract. They knew that Lebowitz had demanded performance under that contract and had threatened suit. The suit against Lebowitz was filed by Ryan and GAMI in February 1979, nearly two months before the Fleming-Wood contract was signed in April of that year. The lis pendens was filed by Lebowitz about 10 days after the Fleming-Wood contract was signed. No one at Ryan or GAMI bothered to tell Fleming-Wood that the property was tied up in this litigation until June 1979.

Appellants also argue that Fleming-Wood entered into the extension agreement with full knowledge of the lis pendens so that a misrepresentation at that time was impossible. When the extension was signed, appellants made assurances that the lis pendens could be disposed of by August 31. Fleming-Wood could have sued at the time the extension was signed or given Ryan and GAMI some time to try to dissolve the lis pendens. Fleming-Wood was still relying on appellant's representations that the suit could be cleared up by August 31.

Also, the jury found all elements of actionable fraud. Therefore, under these facts and the cases above, Fleming-Wood was entitled to benefit of the bargain as damages. The fifth point of error is overruled.

■ We next address the issue of whether there was sufficient evidence to support the jury's finding to Special Issue No. 2a. Appellant's main argument with respect to this point of error seems to be that valuation of the complex as condominiums is too speculative and that there was no evidence to show the value of the complex as an apartment complex.

No objection was ever made at trial when evidence was introduced concerning the value of the complex. Appellants themselves introduced evidence that the complex was worth $4,585,000.00 as townhomes and $3,100,000.00 as apartments. Any objection to this evidence has been waived. The sixth point of error is overruled.

Appellant's seventh and eighth points of error concern Special Issue No. 2b where the jury awarded $528,000.00 reasonable rental value for the time Fleming-Wood would have taken possession of Cambridge

Station under the contract until the time of trial. Their eighth point of error avers that by electing to sue for damages instead of specific performance, Fleming-Wood was not entitled to recover any rentals.

The buyer under a contract to convey real estate has two remedies when the seller fails or refuses to perform under the contract. He can either sue for specific performance and enforce the contract, or he can treat the contract as breached and claim damages.

In this case, Fleming-Wood sued for breach of contract. Under that theory, the measure of damages depends upon the nature of the breach. As stated earlier, if it was willful or fraudulent, then the measure of damages is the benefit of the bargain. Otherwise, the measure of damages is return of the purchase price or the portion of it that has been paid plus any expenses that the plaintiff can establish were incurred in reliance upon the contract. *Dobson v. Zimmerman, supra.*

By Fleming-Wood receiving the benefit of the bargain, he was made whole by his recovery. The $2,000,000.00 award gave him the benefit he would have received if he had sold the property as condominiums. He cannot also recover rentals on that property that he would not own. Appellant's eighth point of error is sustained and we find it unnecessary to discuss point of error seven since appellee is not entitled to recover the rentals.

Appellant's points of error nine and ten complain of the jury's answers to Special Issues 3 through 3F and Special Issue 4. They contend that the trial court erred in overruling their First Amended Motion for Judgment Non Obstante Veredicto and in rendering judgment for $52,000.00 because there is no legally competent evidence, or alternatively, the evidence is factually insufficient to support the jury's answer. Special Issues 3 through 3F deal with the elements of fraud and Special Issue 4 pertains to damages due to the misrepresentation by Ryan and GAMI.

In answer to Issue No. 3 and its subparts the jury found that defendants represented to plaintiff that they had good and marketable title to the property, free and clear of claims and encumbrances; that the representation was material; that it was false; that defendants knew it was false or made it recklessly without any knowledge of its truth; that defendants made the representation with the intent that it be acted on by plaintiff; that plaintiff "acted" in reliance upon it; and that he thereby suffered injury. In answer to Issue No. 4 the jury found damages of $52,000.00 representing "all payments made by and expenses incurred by Fleming-Wood which naturally followed from the misrepresentation by Ryan and GAMI."

Appellants argue that, as a matter of law, defendants had marketable title which could have been conveyed to plaintiff on the date the contract was signed because neither the unrecorded Lebowitz contract nor the unrecorded letter from the Lebowitz purchasers' lawyer clouded the title or would have supported a suit by defendants for slander of title.

Marketable title is not the same as record title. The court, in its charge, gave a correct definition of marketable title.

" 'Marketable title' means a title free and clear from reasonable doubt as to matters of law and fact, such a title as a prudent man, advised of the facts and their legal significance would willingly accept."

A title is not marketable if clouded by any outstanding contract, covenant, interest, lien, or mortgage sufficient to form a basis of litigation, or if it exposes its holder to a reasonable probability of litigation with the least chance of defeat. *Lund v. Emerson,* 204 S.W.2d 639 (Tex.Civ.App.— Amarillo 1947, no writ).

Appellants seem to be arguing that, since Lebowitz' contract was unrecorded, it was not a cloud on the title. But, appellants themselves filed suit on the Lebowitz contract to collect their earnest money and to clear title. Ryan and GAMI knew that there was a dispute with Wilson,

Bray and Lebowitz; knew that there was a claim by them against the property; knew that the parties were already in litigation by virtue of their own suit and knew of the threat of litigation from Wilson, Bray and Lebowitz on the day that Fleming-Wood signed the contract. David Fleming-Wood testified that he would not have entered into the contract if he had known that Wilson, Bray and Lebowitz were going to file a lawsuit and a lis pendens. He would not have bought the property with even the threat of possibility that a lis pendens would be later filed.

GAMI even circulated an in-house memo in March 1979 which stated:

"Committee had previously approved sale for $2,600,000.00 net with a second mortgage of $400,000.00. This deal fell through and Ryan is requesting that they be allowed to sign for GAMI today to head off a specific performance suit by the previous purchaser."

All this evidence shows there was a strong possibility of litigation over the Cambridge Station property and that David Fleming-Wood was not informed of that possibility before signing the sales contract. In fact, the sales contract stated that Ryan and GAMI had good and marketable title at the time the contract was signed. The evidence, which was uncontradicted, shows otherwise. There was ample evidence to support the jury's answers to Special Issues 3 through 3F. The ninth point of error is overruled.

With regard to point of error ten, appellants argue that there is no evidence that Fleming-Wood suffered any damage in reliance upon their representations. The right to recover damages for fraud under common law includes such "additional damages as are directly traceable to the wrongful act complained of and which result therefrom." *Maddox v. Worsham,* 415 S.W.2d 222 (Tex.Civ.App.—Amarillo 1967, writ ref'd. n.r.e.); *El Paso Development Company v. Ravel,* 339 S.W.2d 360 (Tex.Civ. App.—El Paso 1960, writ ref'd., n.r.e.). *See* also *Sherrod v. Bailey,* 580 S.W.2d 24 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ ref'd. n.r.e.).

Fleming-Wood testified that he would not have entered into the contract if he had known of Lebowitz' claims. He relied on Ryan and GAMI's representations of marketable title and entered into the sales contract. Those representations were found to be fraudulent. The expenses appellee incurred in trying to perform the contract are directly traceable to the representations made by appellants. The tenth point of error is overruled.

Appellant's next three points of error deal with the jury's answer to Special Issue No. 5 where they awarded $100,000.00 as exemplary damages. They argue that there was no basis for the award because there was no basis for an award of actual damages and that the damages cannot be supported by the breach of contract finding. They also argue that there was no evidence or, alternatively, insufficient evidence to support the answer.

Appellants are complaining for the first time that the exemplary damage issue was not conditioned upon the answer to any other issue. They have waived any such complaint on appeal by not objecting at trial. Tex.R.Civ.P. 274.

Appellant is correct that exemplary damages cannot be recovered for breach of contract and that actual damages must be shown before exemplary damages are recoverable. *Amoco Production Co. v. Alexander,* 622 S.W.2d 563 (Tex.1981); *Cleburne Nat. Bank v. Kenedco, Inc.,* 547 S.W.2d 67 (Tex.Civ.App.—Waco 1977, writ ref'd. n.r. e.).

In ruling on the two previous points of error, we held that there was ample evidence to support the jury's findings on fraud and damages, therefore, there was a basis for the award of exemplary damages. The points are overruled.

Appellant's fourteenth point of error asserts that because appellee is not entitled to recover for breach of contract, there is no basis for an award of attorneys fees. We have already determined that Fleming-

Wood is entitled to recover for breach of contract, therefore, under paragraph 29 of the contract, he is entitled to recover attorneys fees. The point of error is overruled.

We affirm the judgment but we reform it by ordering the elimination of that part which awarded $528,000.00 to Fleming-Wood for rental value of the premises involved.