First American Title v. Sells, et al. 










.





IN THE
TENTH COURT OF APPEALS
 

No. 10-93-041-CV

     FIRST AMERICAN TITLE INSURANCE
     COMPANY OF TEXAS,
                                                                                              Appellant
     v.

     LES SELLS, INDIVIDUALLY, AND D/B/A
     HIGHLAND JOINT VENTURE NO. 101, ET AL.,
                                                                                              Appellees
 

From the 18th District Court
Johnson County, Texas
Trial Court # 38-87
                                                                                                    

O P I N I O N
                                                                                                    

      Les Sells and Charles Spence, partners in Highland Joint Venture No 101, sued First
American Title Insurance Company for negligence, gross negligence, breach of fiduciary duty,
and real-estate fraud. They alleged that First American failed to record a road easement,
improperly recorded an access easement, and failed to effectively notify them of these errors
affecting 19.826 acres of land they purchased. Based on the verdict, the court awarded Sells and
Spence $331,000 actual damages, $110,000 exemplary damages, and $75,000 attorney's fees. 
First American appeals on eleven points of error, but we will only address the first, which argues
that Sells' and Spence's causes of action were barred by the two-year statute of limitations. We
will reverse and render a take-nothing judgment in First American's favor.
      We must begin our discussion with events that occurred long before Sells and Spence became
involved with the land in question. In 1983 Robert Parma and William McNabb, operating as the
joint venture BAJV, purchased 39.614 acres in Burleson. BAJV intended to develop a mobile
home park on the back or southern portion of the property. To raise funds for development,
BAJV subdivided the land into two parcels—a 19.788-acre section ("Southern Tract") and a
19.826-acre section ("Northern Tract")—and sold portions of the Southern Tract to investors under
a repurchase agreement. Because the Southern Tract would be landlocked if BAJV did not
exercise its repurchase option, BAJV agreed to a private "access easement" located along the
eastern border of the Northern Tract. Although the parties prepared a metes and bounds
description of the access easement, they did not intend for this easement to be recorded.
      BAJV exercised its repurchase agreement in 1984, financed by the Burleson State Bank. The
City of Burleson required BAJV to dedicate a portion of the Northern Tract as a road to provide
access to the proposed mobile home park. BAJV commissioned a plat showing the location of the
streets within the mobile home park, a sixty-foot-wide "road easement" located through the middle
of the Northern Tract to provide the required access, and a "utility easement" along the western
border of the Northern Tract. This plat was submitted to and approved by the City of Burleson
but never recorded. 
      Concurrent with its development of the plans for the mobile home park, BAJV entered into
negotiations with William Vance


 for the sale of the entire 39.6 acres. On the day the sale was
to be closed, March 22, 1985, Vance disclosed that he had been unable to obtain financing from
his lender, Lone Star National Bank, to purchase the entire parcel. Therefore, at the closing
BAJV agreed to sell Vance the Northern Tract only and to give him an option to purchase the
Southern Tract. As part of the closing, McNabb showed Vance a copy of the plat and insisted that
he agree to the road easement. Additionally, Vance agreed to put $50,000 into escrow with Lone
Star National Bank to ensure the construction of the road over the road easement. Because First
American Title served as the closing and escrow agent, this escrow account was placed in First
American's name at Lone Star National Bank. After the sale to Vance was closed, First American
recorded the access easement in the deed records but did not record the road easement.
      Vance did not exercise his option to purchase the Southern Tract. At some point Vance
defaulted on his financing loan, and Lone Star National Bank foreclosed on the Northern Tract. 
To cover the deficiency on Vance's note, the bank also seized the $50,000 in the road escrow
account held in First American's name. 
      After foreclosing on the Northern Tract, Lone Star National placed the land on the market. 
Robert Mallozzi became interested in purchasing the property and contracted to buy the Northern
Tract through his engineering company, Highland Components, Inc. Mallozzi then approached
Charles Spence about purchasing the property, and Spence brought in Les Sells. Together, the
three men formed Highland Joint Venture No. 101 to buy the Northern Tract.


 
      During the morning of April 25, 1986—the day Sells and Spence purchased the Northern
Tract—McNabb went to the offices of First American Title and talked with Glen Rose, a closing
agent employed there. He informed Rose that a transaction involving the Northern Tract was to
close somewhere in the city that day. McNabb told Rose about the $50,000 escrow account and
the possibility that a lawsuit would be filed regarding the unrecorded road easement. Believing
he had the responsibility of conveying this information to the agent who was closing the sale of
the land, Rose called several title companies in the area to determine where the closing was taking
place. He contacted Johnson County Title Company and spoke with Norma Smith, who was going
to close the transaction with Sells and Spence, and told her of the "easement problem," the money
in the escrow account, and that he suspected the land would be involved in litigation. Although
Smith had the title records rechecked prior to closing, which did not reflect the road easement, she
did not tell Sells or Spence of Rose's phone call or its substance.
      On April 25, 1986, Highland Joint Venture No. 101 purchased the Northern Tract under the
sales contract held by Highland Components, the purchase being financed entirely by Lone Star
National Bank. Johnson County Title Company served as the closing agent on the sale. Present
at the closing were Sells, Spence, Mallozzi, two officers from Lone Star National Bank, and
Norma Smith, the closing agent for Johnson County Title. During the closing, Smith presented
a survey of the property to Sells and Spence. This survey showed the access easement, and Smith
required them to initial the survey to indicate that they purchased the property with knowledge of
the access easement. Lone Star National Bank's representatives orally assured Sells and Spence
that the access easement was not valid and would be removed from the title. Sells and Spence
were never told of the road easement prior to closing.  
      In June or July 1986, McNabb approached Sells and Spence concerning the unrecorded road
easement. He showed them a copy of the plat that reflected the road easement and told them of
the escrow account at Lone Star National Bank. McNabb warned Sells and Spence that litigation
over the unrecorded road easement might be "on the horizon." Also, during the summer of 1986,
Lone Star National informed Sells and Spence that the bank could not remove the access easement
from the property, as its representatives had promised at the closing.
      True to McNabb's prediction, on February 11, 1987, BAJV sued First American Title and
Lone Star National Bank over the unrecorded road easement and the escrow account the bank had
seized. In December 1987 BAJV added Sells and Spence as defendants to the suit and asked the
court to impress the road easement on the Northern Tract. On December 23, 1987, BAJV filed
a notice of lis pendens on the property. Sells and Spence filed their cross-claim against First
American Title on March 16, 1989, which was within two years from the date they were joined
as defendants and within two years of the date the lis pendens was filed against the Northern
Tract.


 
      On September 19, 1989, Sells and Spence obtained a summary judgment that (1) BAJV take
nothing on its claim that the road easement should be impressed on the Northern Tract and that
(2) the notice of lis pendens be stricken from the deed records. Among the parties to the suit, only
Sells, Spence, and First American were unable to resolve their disputes pretrial. The court then
realigned the parties, designating Sells and Spence as plaintiffs and First American as defendant,
and proceeded to trial. Sells and Spence submitted to the jury theories of negligence, gross
negligence, breach of fiduciary duty, and real-estate fraud. They based their claims on the failure
of First American Title to record the road easement, as agreed to by BAJV and Vance, First
American's recording of the access easement, when the parties had not intended for it to be
recorded, and on First American's failure to notify them of the problem regarding the unrecorded
road easement prior to their purchase of the property.
      The jury found for Sells and Spence on their claims for negligence, gross negligence, and
breach of fiduciary duty but rejected their real-estate fraud theory. The jury also found that Sells
and Spence knew or should have known of the road easement more than two years prior to March
16, 1989, the date they filed their cross-petition against First American Title. However, the court
disregarded the finding on the limitation question and, based on the verdict, rendered judgment
against First American for $331,286 actual damages, $110,000 exemplary damages, and $75,000
attorney fees.
      In point one First American contends the court erred when it denied a motion for a directed
verdict based on the two-year statute of limitations. It argues that any claims Sells and Spence
might have against First American accrued either on the day they purchased the property (April
25, 1986) or when McNabb informed them of the existence of the road easement (July 1986). 
Thus, according to First American, Sells and Spence should have sued no later than July 1988 or
their claims would be barred by the two-year statute of limitation. See Tex. Civ. Prac. & Rem.
Code. Ann. § 16.003 (Vernon 1986).
      Agreeing that their claims are governed by the two-year statute of limitation, Sells and Spence
argue that their causes of action against First American did not accrue until they suffered a "legal
injury" as a consequence of First American's conduct. See Atkins v. Crossland, 417 S.W.2d 150,
153 (Tex. 1967); Zidell v. Bird, 692 S.W.2d 550, 554-57 (Tex. App.—Austin 1985, no writ). 
They claim that this injury did not occur until December 1987—the month in which BAJV added
them as defendants to the suit and filed the notice of lis pendens against the Northern Tract. 
      The statute of limitations is an affirmative defense, which means the defendant must plead,
prove and secure findings to sustain it. Woods v. William M. Mercer, Inc., 769 S.W.2d 515, 517
(Tex. 1988). First American pled the two-year statute of limitations as a bar. Because First
American is appealing the denial of a motion for directed verdict, the evidence must conclusively
establish that the statute of limitations had run on Sells' and Spence's causes of action prior to their
filing a cross-petition against First American on March 16, 1989, for it to prevail. See Edlund v.
Bounds, 842 S.W.2d 719, 723-24 (Tex. App.—Dallas 1992, writ denied). 
      A statute of limitations begins to run on the date that a cause of action accrues. See Atkins,
417 S.W.2d at 152. Determining when a cause of action accrues is a question of law for the court. 
See Moreno v. Sterling Drug Inc., 787 S.W.2d 348, 351 (Tex. 1990). Generally, a cause of action
accrues when facts arise that authorize a person to seek a legal remedy in the courts. See Robinson
v. Weaver, 550 S.W.2d 18, 19 (Tex. 1977). Under what could be termed the "basic rule," when
the wrongful act and the injury occur essentially simultaneously, the cause of action accrues on
the date of the wrong. See Parker v. Yen, 823 S.W.2d 359, 363 (Tex. App.—Dallas 1991, no
writ). This rule applies when the act is "unlawful" in the sense that the act itself is an invasion
of a right of the plaintiff. See Atkins, 417 S.W.2d at 153. The right to sue arises even if the full
extent of the damages is not determinable at the time of the injury. See id. 
      If, however, the act is "lawful" as to the plaintiff, i.e., it does not invade the plaintiff's
protected rights, so that the act and the consequent injury are separated in time, the cause of action
does not accrue until the act becomes "unlawful" as to the plaintiff, i.e., when some legally
protected interest of the plaintiff is invaded. See id. 
      Once a cause of action accrues, the statute of limitation begins to run unless the time period
is tolled. The "discovery rule" tolls the statute until the plaintiff knew or should have known in
the exercise of reasonable diligence of the wrong he previously suffered. See Willis v. Maverick,
760 S.W.2d 642, 644 (Tex. 1988). To determine if Sells' and Spence's causes of action against
First American are time-barred, we must determine when their claims accrued and when the
statute of limitations began to run on their claims.
      Under Sells' and Spence's theories of recovery, First American Title acted wrongfully on two
separate occasions. First, after the closing between BAJV and Vance in March 1985, First
American recorded the wrong easement in the chain of title.


 Second, First American failed to
warn Sells and Spence of the road-easement problem when they bought the property in April
1986.


 
      Under the first theory, First American's acts were "lawful" as to Sells and Spence because
they did not have an interest in the land in March 1985; thus, none of Sells' or Spence's rights
were invaded by First American's actions in March 1985. However, assuming that First
American owed some duty to Sells and Spence, as necessarily found by the jury, its failure to
effectively notify them of the unrecorded road easement on the day of their purchase of the
property was an "unlawful" act as to Sells and Spence because, under the assumed duty, they had
the right to full disclosure by First American of the facts involving the land. Thus, First
American's failure to notify them resulted in an invasion of their protected right to full disclosure,
a completed wrong in itself. Had Sells and Spence known that First American did not disclose all
of the material facts to them prior to the closing of the sale, they could have sued First American
on the very day of the closing. See Zidell, 692 S.W.2d at 558. The extent of the damages they
suffered as a result of First American's breach of its assumed duty to disclose would not have been
fixed at that time, but this does not prevent the cause of action from accruing. See Atkins, 417
S.W.2d at 153. Thus, the claims by Sells and Spence against First American based on the failure
to notify accrued on April 25, 1986.
      We must still determine when Sells and Spence were injured as a consequence of First
American's failure to record the road easement in March 1985. First American urges us to
conclude that Sells and Spence were injured either at closing (April 25, 1986) or when McNabb
informed them of the controversy involving the road easement (July 1986). Sells and Spence
contend, however, that their injury did not occur until December 1987, when BAJV joined them
as defendants in this suit and filed the notice of lis pendens in the deed records. Until that point,
Sells and Spence maintain, they possessed free and clear title to the property under the contract
with Lone Star National Bank and the title insurance policy issued them at closing.
      We believe that Sells and Spence were injured at the time they purchased the property on
April 25, 1986. They contracted with Lone Star National Bank to purchase a marketable title to
the land—"a title free and clear from reasonable doubt as to matters of law and fact, i.e., not
clouded by any outstanding contract, covenant, interest, lien, or mortgage sufficient to form a
basis of litigation." See Lieb v. Roman Development Co., 716 S.W.2d 653, 655 (Tex. App.—
Corpus Christi 1986, writ ref'd n.r.e.). A marketable title is one which "a prudent man, advised
of the facts and their legal significance would willingly accept." Ryan Mortg. Investors v.
Fleming-Wood, 650 S.W.2d 928, 936 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.). However,
if a title exposes its holder to a reasonable probability of litigation with the least chance of defeat,
it is not marketable. Medallion Homes, Inc. v. Thermar Investments, 698 S.W.2d 400, 403 (Tex.
App.—Houston [14th Dist.] 1985, no writ), overruled on other grounds, Ojeda de Toca v. Wise,
748 S.W.2d 449, 450 (Tex. 1988). 
      Because of the questions surrounding the road easement, Sells and Spence did not receive a
marketable title at closing. In fact, they both testified at trial that they would not have purchased
the property if they had known of the problem with the road easement. Spence stated that the
disputed road easement and potential litigation prevented him from marketing the property or
constructing a shop on the land. Sells also testified: "I think their claim against us did cause some
problems, yes, sir. . . . I was put in a position [of] . . . pending litigation where we could not do
anything with the property . . . [W]hen these easements showed up it caused us a problem and
we've been involved in this problem ever since because the correct easements were not filed by
First American Title Company." Thus, Sells and Spence received an impaired title at closing as
a consequence of First American's failure to record the road easement in March 1985 and any
cause of action based on the failure accrued as of the date of the closing, April 26, 1986.
      Furthermore, Sells and Spence's theory of the case in the court below necessarily
contemplated an injury as of the date of closing. They alleged in their cross-petition against First
American Title Company that the failure to file the road easement "resulted in damages . . . of
[lost] opportunity to sale or develop the said tract and by the payment of interest to its mortgagee,
Lone Star National Bank from April, 1986 to the conclusion of this lawsuit." In an amended
cross-petition, they sought damages "because of their inability to sell the Front Tract while the
litigation was pending and the question of the easement still existed." The cross-petition sets out
all of the costs, including the down payment, interests payments, and taxes, that Sells and Spence
incurred since they purchased the property in April 1986. Apparently accepting their assertions
of injury, the jury awarded Sells and Spence their "out-of-pocket carrying costs" of the property
back to the date of purchase, April 1986.
      However, neither Sells or Spence were aware of the unrecorded road easement as of the day
of the closing. They could not have been aware of the damage they had sustained when they
purchased the land. Thus, the discovery rule acted to toll the statute of limitations until they knew
or should have known that they had sustained some damages as a result of First American's
actions. See Willis, 760 S.W.2d at 644.
      The jury found that Sells and Spence knew or should have known of the disputed road
easement more than two years prior to filing their cross-petition. The evidence conclusively
establishes this fact. At their meeting in June or July 1986, McNabb told Sells and Spence of the
road easement, the $50,000 escrow account, showed them the plat reflecting the road easement,
and warned them of potential litigation. When McNabb told them of the unrecorded road
easement, they were made aware that their title to the Northern Tract was impaired. Moreover,
they knew they were exposed to a reasonable probability of litigation, which included the
possibility that they might lose their clear title to the property. A prudent man would not have
accepted the title that Sells and Spence purchased in the face of the facts in their possession after
talking with McNabb. Sells and Spence immediately retained a real-estate attorney in July 1986
"to see where [they] stood on [the] property." 
      Sells' and Spence's own pleading and testimony establish the date of legal injury at the closing
on April 26, 1986. Their testimony further shows they were aware of the problem by June or July
1986, at the latest, when they first learned from McNabb of the unrecorded road easement and
potential litigation. Moreover, based on their allegation of injury and calculation of damages, the
jury awarded them "carrying costs" back to the date of purchase, April 25, 1986. Under the two-year statute of limitations, Sells and Spence had until July 1988, at the latest, to file suit against
First American. They filed their cross-petition in March 1989, well after the statute of limitations
had run. Thus, the trial court erred when it denied First American Title's motion for a directed
verdict based on limitations. That BAJV's claims against the Northern Tract were ultimately
resolved in favor of Sells and Spence by the September 1989 summary judgment does not change
our conclusion because this resolution occurred well past the date on which the claims at issue here
became time barred. Thus, point one is sustained.
      Because Sells and Spence's claims were barred by the statute of limitations, the judgment of
the court is reversed, and a take-nothing judgment is rendered against them.




                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Reversed and rendered
Opinion delivered and filed August 17, 1994
Do not publish